### CUTLER v. CUTLER-HAMMER MFG. CO.

(District Court, D. Massachusetts. February 3, 1920.)

No. 1138.

**Corporations** ⟨key⟩642(4½)—**Corporation held to have been doing business within state, notwithstanding claim that business belonged to subsidiary.**

A foreign corporation, which had filed notice of withdrawal from business within the state, and created a subsidiary corporation of the same name to do business therein, but which conducted all its dealings with the local agent of the subsidiary corporation directly, and not through the officers of subsidiary, is present within that state and district, and may there be served with process, though on its books it recorded the business done with the agent as business of the subsidiary.

At Law. Action by Henry H. Cutler against the Cutler-Hammer Manufacturing Company. On plea in abatement. Plea adjudged bad, with leave to answer over.

James E. Young, of Boston, Mass., for plaintiff.

Choate, Hall & Stewart and Charles O. Pengra, all of Boston, Mass., for defendant.

MORTON, District Judge. The issue of fact tendered by the plea in abatement was by agreement of parties heard by the court on depositions and oral testimony. The decisive question is whether the defendant corporation was so present within this district as to be subject to suit here. It it was, service could be made upon it in the manner provided by the state statutes, and was so made.

The facts are as follows: The defendant is a Wisconsin corporation It is of substantial size, and manufactures a line of electrical goods which are sold pretty broadly throughout the country. It organized as a subsidiary a New York corporation of the same name—for I regard the use of the word "The" as part of the corporate name, and the difference between "Manufacturing" and "Mfg." as unsubstantial—to act as its selling agent in New York and New England. Up to the time when this was done, the defendant itself had maintained an office in Boston, and had filed the required power of attorney with the commissioner of corporations in Massachusetts. After the New York corporation was organized, the defendant revoked its own power of attorney, and the subsidiary filed one and complied with the Massachusetts requirements of foreign corporations doing business in this state. I see no reason to doubt that it was the intention to have the defendant corporation withdraw from business here, and to leave that business in charge of the New York corporation; and I see nothing fraudulent or improper in the plan, except, perhaps, the confusion likely to arise from the identity of names between the principal and the agent.

The real question is whether, in spite of an intention to the contrary, the defendant has in fact continued to do business here. At the time when the present action was begun the lease of the Boston

office was in the name of the New York corporation, and Mr. Foote, the manager of the office, was appointed by the New York corporation. He in turn selected the subordinate employés, about a dozen in number. Foote's salary was paid by the defendant, and so were all other expenses of the office. Some of the employés were paid by check direct from Milwaukee, and some by Foote with money sent from there. The stationery and supplies, except those bought locally, were furnished by the defendant. General direction and control of the office was exercised by the defendant's sales manager, Mr. Stevens, who gave instructions to Foote. The policy of the Boston office was determined by the defendant's directors. Except the appointment of Foote, there is no evidence of any act of control by the New York corporation over the Boston office. It was operated as if it were an office of the defendant. Foote reported all sales to the defendant, and remitted to it all collections which he received. Bills for goods made at the defendant's factory, and sold through the Boston office, were sent out by the defendant. Foote did not have authority to enter into contracts for the defendant, nor, so far as appears, for the New York corporation. His duty was to forward orders for acceptance. Nor did he have power to adjust claims.

There was kept at the Boston office a considerable stock of goods, from which Foote was authorized to make sales, and did make sales from time to time. The money so obtained was forwarded to the defendant. Foote also furnished men to do repair work, and the defendant rendered bills for such services on memorandum from Foote. In the advertising matter put out by the defendant, it referred to the Boston office as its office, and it made the same statement in letters which it sent to prospective customers. It is true, as the defendant says, that for present purposes its presence within this jurisdiction cannot be founded upon an estoppel, and that this case is not the same as one in which a party to a contract made here was endeavoring to bring suit. But where the facts concerning a business office leave it in doubt whether A. did business there, his statement that he did so may be very significant.

On the facts stated it would ordinarily be held that the defendant corporation was so present as to be subject to suit. The defendant contends, however, that it is relieved from that liability by the arrangement between it and the New York corporation. That arrangement is testified to have been as follows: All the expenses of the Boston office paid by the defendant were charged to the New York corporation; all receipts by the defendant from the Boston office were credited to the New York corporation; all the goods sent by the defendant to the Boston office for sale were billed to the New York corporation; and, speaking generally, as between the defendant and its subsidiary, the Boston office was treated as belonging to the latter. The management and control were exercised by the defendant, according to the testimony, because it was cheaper and better to concentrate all the bookkeeping and financing of the entire organization in a single office. If this evidence be accepted, the defendant argues that the business in Boston was really the business of the New York

corporation, so that the defendant itself was not present here, and had no representative on whom process could be served.

The arrangement claimed by the defendant to exist between the two companies is entirely oral; no written evidence of it is produced. The goods sent to the Boston office by the defendant were marked with its name, or at least they were not so marked as to indicate to Foote that they belonged to the New York company. The fire insurance policies on them are not produced. I doubt whether Foote understood that they were goods of the New York company. They were treated as if they belonged to the defendant.

I see no reason to doubt that the accounts on the books were kept as the defendant contends; but it seems to me very doubtful whether the mere book entries were sufficient to transfer the title of the goods sent to Boston from the defendant to the New York corporation. The subsidiary seems to have amounted to little more than a bookkeeping arrangement. In my opinion, the defendant was doing business at the Boston office, and Foote was its representative in charge of that business.

Upon all the evidence, I find and rule that the defendant was present and doing business at the "Boston office," so called, that Foote was its representative in charge of that business, and that due and sufficient service of process in this action was made upon it.

Plea in abatement adjudged bad, with leave to answer over.