Williams *v.* Rose (et al., Appellant).

Argued March 21, 1961. Before JONES, C. J., BELL, MUSMANNO, JONES, COHEN, BOK and EAGEN, JJ.

*William J. Kenney,* with him *Kenney, Stevens, Hill & Clark,* for appellant.

*D. Malcolm Anderson,* with him *Thomas N. Griggs, Donald C. Bush,* and *Griggs, Moreland, Blair & Douglass,* for appellee.

OPINION BY MR. JUSTICE BOK, May 22, 1961:

This is an appeal by the Dyson Corporation, defendant, from an order of the court below dismissing its preliminary objections to jurisdiction.

The merits of the case are not before us, but to give it a shape they concern the purchase of The Hubbard Company stock for $4,543,000 from two sisters, one now incompetent. The book value of this company's current assets, as alleged in the complaint, was about $8,500,000 and the market value of the stock "greatly in excess of $7,000,000". Fraud and deception are alleged. In addition to the complaint, answer, and interrogatories, extensive depositions were taken of the presidents of the two companies involved.

The point now at issue spins down to whether or not the Dyson Corporation was doing business in the Commonwealth and whether it was amenable to service. The Corporation denies that it was legally active here, while the plaintiff, by her guardians, assert the opposite.

There were three attempts to serve the appellant, apparently to follow changes in the Business Corporation Law, Act of May 5, 1933, P. L. 364, as amended by the Act of September 26, 1951, P. L. 1475, §22, 15 P.S. §2852-1011(B) & (C). The pertinent part of this Act, Section 1011(B), reads: "B. Any foreign business corporation which shall have done any business in this Commonwealth, without procuring a certificate of authority to do so from the Department of State, shall be conclusively presumed to have designated the Secretary of the Commonwealth as its true and lawful attorney authorized to accept, on its behalf, service of process in any action arising out of acts or omissions of such corporation within this Commonwealth. On petition, alleging conduct of business within the Commonwealth by any corporation not qualified by the Secretary of the Commonwealth or having otherwise designated him as agent for the service of process, the court of the county in which the action is instituted shall authorize service to be made upon the Secretary of the Commonwealth. . . ."

Summons in equity issued on July 25, 1958, and on August 25th return was made of conventional service on the various defendants.

The doing of business required by Section 1011(B) was defined by the Act of 1951 by Section 1011(C) as follows: "C. For the purposes of this act [now section] the entry of any corporation into this Commonwealth for the doing of a series of similar acts for the purpose of thereby realizing pecuniary benefit or otherwise accomplishing an object, or doing a single act in this

Commonwealth for such purpose with the intention of thereby initiating a series of such acts, shall constitute 'doing business'."

This section was repealed by the Act of July 11, 1957, P. L. 711, §1011(C), and re-enacted at the next session of the Legislature by the Act of November 10, 1959, P. L. 1406, §1011(C), 15 PS §2852-1011(C).

After a court order dated October 10, 1958, service was made on the Secretary of the Commonwealth and on the appellant at its corporate office in Wilmington, Delaware, and upon Hubbard & Co., defendant, in care of the appellant at the latter's New York office, all by registered mail.

The third service was made pursuant to a court order dated June 10, 1960, by registered mail to the Secretary of the Commonwealth and again to appellant's corporate office in Delaware.

There is no complaint about the manner of service.

When the sustaining of preliminary objections will result in dismissing the suit, and that is the usual purpose of filing them, it should be done only in cases that are clear and free from doubt: *Robinson v. Philadelphia*, 400 Pa. 80 (1960), 161 A. 2d 1; *Gardner v. Allegheny County*, 382 Pa. 88 (1955), 114 A. 2d 491. We do not think that the case before us has such clarity as to warrant summary action.

The Dyson Corporation was formed under Delaware law in order, at the insistence of Charles H. Dyson's Boston bank, to finance the purchase of the Hubbard Company's stock and to hold it. The Corporation had no Pennsylvania office of its own, nor was it registered to do business in the Commonwealth. The plaintiff was a resident of Pittsburgh, and defendant Knowles was president of the Hubbard Company and son-in-law of defendant Gretchen Pack Rose. Mrs. Rose owned $\frac{3}{8}$ of the Hubbard stock and Mrs. Williams, the plaintiff, owned $\frac{5}{8}$. These women were half-

sisters and received their Hubbard stock from the Estate of John W. Hubbard. According to the complaint, Knowles brought Dyson into the picture, and together with Mrs. Rose induced Mrs. Williams, with Dyson's knowledge and by fraud and artifice, to sign an option agreement for the sale of her stock. A Pittsburgh bank was made escrow agent, and the exercise of the option and sale of the stock were completed there.

The money by which the Dyson Corporation made the purchase was borrowed from Dyson's Boston bank through the Pittsburgh bank as escrow agent, and the Hubbard Company then borrowed enough to pay a dividend of $4,600,000 to its stockholder, the Dyson Corporation.

The Hubbard Company had plant, machinery, and an office in Pittsburgh. Between September 28, 1954, and November 29, 1955, the appellant held four directors' and stockholders' meetings in Pittsburgh, and the Hubbard Company held two: corporate business was transacted at these meetings. Between 1954 and 1958 the Hubbard Company made advancements to the Dyson Corporation from funds in its Pittsburgh bank totalling $1,585,000.

Between 1954 and 1958 Dyson visited the Hubbard Company in Pittsburgh every other week, received $3750 per month from it as salary for four months in 1955, and $43,091.52 as expenses between 1954 and 1958. It seems obvious that he dominated both companies. Knowles, a Dyson director, lived in Pennsylvania and acted as President of the Hubbard Company in its Pittsburgh office. Billock, Treasurer of Dyson, acted similarly from 1955 to 1958. The Dyson Corporation had no payroll of its own before October, 1958, and all salaries were paid by Hubbard from Pittsburgh for work done there. From 1954 to 1956 both companies had the same directors. And since Dyson owned all of Hubbard's stock and since Hub-

bard was admittedly doing business in Pittsburgh until it moved out of the State, it is obvious that Dyson had valuable assets here.

From these and other facts in the record we have no difficulty in believing, with the court below, that the two companies formed one small empire, with Hubbard the alter ego of the other. In *Edirose Silk Mfg. Co. v. First National Bank*, 338 Pa. 139 (1940), 12 A. 2d 40, we said: "In an appropriate case and where, as here, justice to all parties requires it, this Court will not hesitate to treat as identical the corporation and the individual or individuals owning all its stock and assets. Particularly in equity, where substance is more important than form, the Court will not in a case before it permit the fiction of corporate entity to lead to an unjust result."

In *Rumig v. Ripley Manufacturing Corp.*, 366 Pa. 343 (1951), 77 A. 2d 360, we said: "Nor will this Court permit the use of such fiction to enable the owners to escape jurisdiction of the courts where, as here, it clearly appears that the Pennsylvania corporation and the New York corporation are owned by the same individuals and that the former is in fact a mere corporate agency of the latter. It is subject to and controlled by the latter. The owner of the New York corporation could not by creation of an alter ego in form of a Pennsylvania corporation divorce itself from the fact of use of the premises within this Commonwealth."

These rules have a wide girth when fraud is alleged, and we will not rummage for reasons to support summary judgment. As we said in *Gallagher v. Merry*, 366 Pa. 258 (1951), 77 A. 2d 379: "It is more desirable, when fraud is charged, to pass upon the merits of the cases rather than to rely upon technicalities of pleading." While we do not equate technicalities of pleading with jurisdiction, we feel that lack of jurisdiction

should appear with greater clarity than is suggested by this record. There was ample activity by both corporations, separately and as a team, to warrant the claim of jurisdiction.

Appellant makes several arguments, such as that there was no "doing business" by appellant under the original or amended versions of the Act; that the fraud, if any there was, was done before appellant entered the State; that the separation between the two companies was scrupulously observed; and that due process under the Fourteenth Amendment to the Federal Constitution is involved. It need only be mentioned en passant that from the record there is indication enough that the formation of the Dyson Corporation was part of the alleged fraud. A scrupulous separation of corporate identities may itself be an instrument of artifice. It also appears, prima facie, that the companies were operating in Pennsylvania under the Business Corporation Law and that the Dyson Corporation was served at least under Section 1011(B) thereof. It is not necessary that the preliminary evidence cover the entire case; it suffices that enough appear to carry the burden of preliminary persuasion. We now pass on no more than what is needful to ensure a full exploration of the facts by trial; what may appear belongs to a future day. But we are clear that jurisdiction adequately appears under the Act because of the activities of these closely related companies within Pennsylvania at the time pertinent to the alleged fraud. This doing business within the State satisfies the Fourteenth Amendment, and each case must rest on its own facts: *Shambe v. Delaware & Hudson R.R. Co.*, 288 Pa. 240 (1927), 135 A. 755; *New v. Robinson-Houchin Optical Co.*, 357 Pa. 47 (1947), 53 A. 2d 79.

Order affirmed, with a procedendo. Costs to abide the event.