Edward Aaron MAYS

v.

OXFORD PAPER COMPANY.

Civ. A. No. 28807.

United States District Court
E. D. Pennsylvania.

June 7, 1961.

Dorfman, Pechner, Sacks & Dorfman, Philadelphia, Pa., by Harry Lore, Philadelphia, Pa., for plaintiff.

Ballard, Spahr, Andrews & Ingersoll, Philadelphia, Pa., by Charles I. Thompson, Jr., Philadelphia, Pa., for defendant.

WOOD, District Judge.

At the outset, we wish to comment on the comprehensiveness, clarity, and excellence of the briefs of counsel for both plaintiff and defendant. Such briefs are of great assistance to the Court in deciding legal problems.

### I. Re Motion to Dismiss

The defendant, Oxford Paper Company, has moved to dismiss the plaintiff's complaint on the ground that it has not been validly served with process, and that, therefore, this Court has no jurisdiction over it.

The defendant is a corporation organized under the laws of the State of Maine, and manufacturing paper products in that State. Service of process on the defendant was made by serving the Secretary of the Commonwealth of Pennsylvania pursuant to Rule 4(d) (7) of the Federal Rules of Civil Procedure 28 U.S.C.[1] and pursuant to Section 1011 of the Pennsylvania Business Corporation Code (15 Purdon's Stat. § 2852–1011). That section provides in pertinent part as follows:

"B. Any foreign business corporation which shall have done any business in this Commonwealth, without procuring a certificate of authority to do so from the Department of State, shall be conclusively

presumed to have designated the Secretary of the Commonwealth as its true and lawful attorney authorized to accept, on its behalf, service of process in any action arising out of acts or omissions of such corporation within this Commonwealth * * *."

"C. For the purpose of this section, the entry of any corporation into this Commonwealth for the doing of a series of similar acts for the purpose of thereby realizing pecuniary benefit or otherwise accomplishing an object, or doing a single act in this Commonwealth for such purpose, with the intention of thereby initiating a series of such acts, shall constitute 'doing business.'"

The defendant contends (1) that it has not "done business" within this Commonwealth; and (2) that its activities within the Commonwealth bore no relation whatsoever to the plaintiff's injury, and, therefore, plaintiff's action does not arise out of "acts or omissions" of the defendant within this Commonwealth.

■■ It is our function as a Federal Court sitting in Pennsylvania to follow the construction accorded these statutory provisions by the Supreme Court of Pennsylvania. Subparagraph C, defining what constitutes "doing business," was added to the statute in 1951.[2] Prior to its enactment, the Supreme Court of Pennsylvania had judicially defined "doing business" in a series of cases which limited that concept to activities consisting of more than merely soliciting business within the Commonwealth. As is plain from the language of subparagraph C, the concept of "doing business" has been broadened to include "the doing of a series of similar acts for the purpose

---

1. Rule 4 provides that service may be made " * * * in the manner prescribed by the law of the state in which the service is made for the service of summons or other like process upon any such defendant in an action brought in the courts of general jurisdiction of that state." Thus, determination of the validity of service of process in this case depends upon local law.

2. Subparagraph C was repealed in 1957 (see Act of July 11, 1957, P.L. 711, § 1) but was added again in 1959 by the Act of November 10, 1959, P.L. 1406, § 1. (See 1960 Supplement to Title 15 of Purdon's Stat.)

of thereby realizing pecuniary benefit * * * or doing a single act in this Commonwealth for such purpose, with the intention of thereby initiating a series of such acts." By the addition of subparagraph C, the statute apparently now includes the mere solicitation of business within the Commonwealth in the concept of "doing business." The question remains, however, as to the agency relationship necessary between the corporation and its local representative in order to find that the corporation "entered" this Commonwealth to perform such a series of acts. For example, many corporations have "manufacturer's representatives" who solicit business in a certain area. Such activities in Pennsylvania would fall within the statutory definition of "doing business" as set forth in subparagraph C; but would it be *the corporation* which was doing the business if its local representatives were not its salaried employees or agents?

This was one of the problems confronting the court in the case of Swavely v. Vandegrift, 1958, 19 Pa.Dist. & Co. R.2d 153; affirmed 1959, 397 Pa. 281, 154 A.2d 779. In that case the corporate defendant manufactured a household disposal device and marketed that device in Pennsylvania through two distributors located in Pennsylvania. The defendant also had two manufacturer's representatives who traveled around Pennsylvania calling on the distributors, aiding in promotional campaigns for the defendant's products, and looking for potential new distributors. In an opinion by Judge Satterthwaite, which was adopted by the Supreme Court, the details of the defendant's contractual relationships with both the Pennsylvania distributors and the manufacturer's representatives who covered Pennsylvania were analyzed in detail. The court concluded that these contracts clearly showed that the distributors and the manufacturer's representatives were *not* the agents of the defendant corporation, but rather were independent contractors who handled the defendant's products along with the products of other companies. Having found

that the defendant corporation had no *agent* in Pennsylvania, the court held that the defendant had never "entered this Commonwealth or done any series of similar acts, or even a single act, through its own officers or employes, whether authorized to bind it or not and whether for its pecuniary benefit or not * * *" (Swavely v. Vandegrift, supra, 19 Pa.Dist. & Co.R.2d at page 165.) In the words of Judge Satterthwaite:

"Obviously, an impersonal corporate entity organized and located in another jurisdiction can be said, in the words of the statute, to have 'entered' the State of Pennsylvania *only if its agents or property have been physically present therein on the relevant occasion.*" (Emphasis supplied.) At pages 165, 166.

We stress the fact that the Swavely case held only that the defendant corporation had not "entered" Pennsylvania *because it had no agents* acting in Pennsylvania. It did *not* hold that the distribution of defendant's products, or the promotion of its products by the manufacturer's representatives, were not the kinds of activities which would fall within the statutory definition of "doing business," had such activities been carried on by the corporation through its agents. In fact, it seems too clear for argument that such activities would constitute "a series of acts done for the purpose of realizing pecuniary benefit or otherwise accomplishing an object" within the meaning of subparagraph C of the statute. Judge Satterthwaite said:

"All we hold is that Calcinator Corporation has not been shown to have 'entered' this Commonwealth or done any 'acts' therein through its agents or employes and therefore is not within the definition of 'doing business' contained in either section 1011C or the prior decisions of the Supreme Court of Pennsylvania." At page 168.

█ The Swavely case is the only Pennsylvania authority we have which interprets the relevant statutory provi-

sions herein involved. Applying the *ratio decidendi* of that case to the case at bar, we must first inquire into the presence in Pennsylvania of the corporate defendant acting through its agents. Here we have a clear case of agency between the Oxford Paper Company and its local representatives. It has *two salaried employees* who travel through Pennsylvania visiting merchants who purchase paper products from the defendant. These men advise the defendant's customers on the new products being manufactured by the defendant, give them "technical advice," and generally promote the defendant's products.[3] Although the defendant has no office nor property in Pennsylvania, we think the regular visits of the defendant's salaried representatives constitute the corporation's "entry" into the Commonwealth within the meaning of the statute.

■ The second inquiry is whether the activities of the defendant carried on in Pennsylvania through its representatives constitute "doing business." We think their activities fall within the statutory definition of that phrase as "the doing of a series of similar acts for the purpose of thereby realizing pecuniary benefit or otherwise accomplishing an object." The Swavely case holds nothing to the contrary; and the plain meaning of the statutory language requires the result. Therefore, we hold that the defendant was and is doing business in Pennsylvania within the meaning of subparagraph C of the statute.

This does not end our inquiry into the validity of the service upon the defendant by service upon the Secretary of the Commonwealth. Subparagraph B of the statute allows such service only in "any action arising out of acts or omissions of such corporation within this Commonwealth * * *." The question arises as to whether the plaintiff's action arose out of the activities of the defendant's

Pennsylvania representatives within the meaning of subparagraph B.

The plaintiff was injured while moving a large and heavy roll of paper manufactured by the defendant in Maine. The roll was being transported by a Mansaver device, and slipped out of its casing, injuring plaintiff. The accident occurred in Philadelphia, on the premises of the plaintiff's employer. The employer was not a customer of the defendant. The Hearst corporation of New York had purchased the particular roll of paper and had directed the defendant to ship it to the plaintiff's employer, which was to perform printing services for Hearst. Defendant's representatives had had no occasion to visit or to have any contacts with plaintiff's employer.

■■ Plaintiff has alleged that the defendant was negligent in manufacturing the roll of paper, and that defendant breached certain warranties. Plaintiff's counsel has indicated in his brief, however, that the warranty theory is at most a secondary theory of recovery, and that the plaintiff mainly relies upon the allegation of negligence. The defendant contends that since the negligent act complained of by the plaintiff undisputably occurred in Maine, the plaintiff's action "arose out of that act" within the meaning of the statutory phrase, and not out of any act within this Commonwealth. On the other hand, the plaintiff argues that the "act" contemplated by the statutory phrase is the last act necessary to give rise to an action for tort; namely, the injury to the plaintiff which occurred in Pennsylvania. In support of this contention, plaintiff relies upon the case of Florio v. Powder Power Tool Corp., 3 Cir., 1957, 248 F.2d 367. In that case the plaintiff was injured in Pennsylvania by a tool manufactured in Oregon by the defendant. The defendant contended that it could not be served by service upon the Secretary of the Com-

3. In the deposition of Mr. Bruning, Oxford's Vice-President and Treasurer, he stated that the two Pennsylvania representatives "keep in contact with our merchants and create contacts with other potential users of paper. They are promoting the product." (At p. 8.)

monwealth because the action did not arise out of an act of the corporation done in Pennsylvania; the negligent act, if any, occurred in Oregon, argued defendant. The Court rejected this argument, and in an opinion by Chief Judge Biggs, stated:

" * * * we cannot believe that the Pennsylvania Legislature, possessing the clear intent to increase the protection of its citizens by enlarging the jurisdiction of the courts of the Commonwealth over foreign corporations, would militate against this purpose by abandoning the unbroken line of authority which localizes the tort to the place where the last event necessary to make an actor liable, the injury, actually occurred. We must conclude, in the absence of legislative history to the contrary, that it was the intent of the Pennsylvania Legislature to regard an injury flowing from the careless manufacture of an instrumentality as the *act* veritably contemplated by subsection B." At page 374.

Counsel for defendant in the case at bar has pointed out that the Florio case was decided before the Swavely case and therefore without the benefit of any Pennsylvania Supreme Court decision interpreting that phrase of the statute. Defendant argues that dictum in the Swavely case indicates that the Pennsylvania Supreme Court interprets the "act" referred to in the statute as the negligent act complained of, as for example, the manufacture of the tool in the Florio case. We must reject this contention. In the first place, the paragraph of the opinion relied on by defendant is not without ambiguity. Whatever the court meant to convey by that paragraph, it is pure dictum and is also only a small part of a rather lengthy opinion—one *adopted but not written,* by the Supreme Court of Pennsylvania. We therefore hesitate to ascribe great significance to that paragraph as a guide to what the Pennsylvania Supreme Court would say were it presented with this problem.

We think our thinking on the matter is governed by the United States Court of Appeals' decision in the Florio case. We hold, then, that the defendant in the case at bar was properly served by service upon the Secretary of the Commonwealth, since it was doing business in Pennsylvania and since the plaintiff's action arose out of an act of the defendant within the Commonwealth.

II. Re Motion to Transfer

▮ The defendant has moved to transfer this case to the Southern District of New York where the same suit is presently pending. In support of this motion the defendant argues that the plaintiff's choice of a forum, which is ordinarily entitled to much weight in considering motions to transfer, should be given little consideration by us since the plaintiff has voluntarily instituted an action in the Southern District of New York—the forum to which the defendant seeks to have the action transferred. However, we note that the plaintiff instituted the New York action for the sole purpose of protecting himself against the possibility of an adverse ruling here on the admittedly close question of jurisdiction over the defendant in the Eastern District of Pennsylvania. There is no doubt but that the defendant is doing business in New York. Counsel for plaintiff has indicated that in the event of a favorable ruling on the jurisdiction question, he will discontinue the New York suit. In this situation, we think the plaintiff should not be penalized by our disregarding the fact that his real choice of a forum is the Eastern District of Pennsylvania.

Starting, then, with the fact that the plaintiff has chosen this forum, and adding to that the fact that the plaintiff's abundant medical evidence is located in Philadelphia, and the eye witness to the accident resides in Philadelphia, we think the plaintiff has shown ample connections with the Eastern District of Pennsylvania to justify our denying the defendant's motion to transfer. Putting it another way, we think that the defend-

ant has not shown a strong case of inconvenience to the parties in having the action tried in this District. Therefore, the defendant's motion to transfer this case to the Southern District of New York is denied. However, this denial is without prejudice and defendant is free to renew this motion at any time in the future if plaintiff continues to prosecute the New York action.

### III. Re Motion to Stay

[9, 10] The defendant has moved to stay this action pending the outcome of the New York suit. However, the suit in this District was commenced prior to the institution of the New York suit. The ordinary rule is that the action begun first shall be permitted to proceed to termination and any subsequent action shall be stayed meanwhile. The only reason given by the defendant for making an exception in this case is that the time lag in reaching trial is greater here than it is in the Southern District of New York. We think this is not a sufficient reason for staying the action here, particularly in light of the discussion *re* the motion to transfer; namely, that this is where plaintiff wants to have his day in Court.