Botwinick *v.* Credit Exchange, Inc., Appellant.

Argued May 3, 1965. Before BELL, C. J., MUSMAN-NO, JONES, COHEN, EAGEN, O'BRIEN and ROBERTS, JJ.

*Jerome J. Shestack,* with him *Ira P. Tiger,* and *Schnader, Harrison, Segal & Lewis,* for appellant.

Michael F. Walsh, with him Leonard Spear, and Meranze, Katz, Spear & Bielitsky, for appellee.

OPINION BY MR. JUSTICE JONES, September 29, 1965:

The sole issue on this appeal is the validity of the service of a complaint in trespass in Philadelphia upon a foreign corporation.

Gerald Botwinick, on December 13, 1963, instituted a trespass action in Court of Common Pleas No. 3 of Philadelphia County against Credit Exchange, Inc., a New York corporation (the New York corporation), wherein Botwinick sought damages for an alleged business libel by the New York corporation. On December 27th, 1963, a deputy sheriff of Philadelphia County purported to serve the complaint in Philadelphia upon the New York corporation. The sheriff's return of service recited that a true and attested copy of the complaint had been served on one Mr. DiVitto[1] "the clerk for the time being in charge of [the New York corporation's] usual place of business at 1218 Chestnut St., in the County of Philadelphia . . . ."

The New York corporation filed preliminary objections on the ground that the court lacked jurisdiction over the person of the New York corporation inasmuch as 1218 Chestnut St., Philadelphia, was not "the usual place of business" of the New York corporation, but rather was the "the usual place of business" of Credit Exchange of Pennsylvania, Inc., a Pennsylvania corporation (the Pennsylvania corporation), which, although a subsidiary of the New York corporation, was not a defendant in the trespass action. In support of its preliminary objections, the New York corporation submitted an affidavit by its executive vice-president setting forth that the New York corporation was organized in New York, was not licensed nor registered to do

---

[1] Strange as it may seem, the record fails to identify Mr. DiVitto.

business in Pennsylvania, had never filed tax returns nor paid taxes in Pennsylvania, owned the capital stock of the Pennsylvania corporation, but did not operate or control the latter's business, filed state and federal taxes separately from its subsidiary, maintained separate minutes and bank accounts and conducted separate meetings, all outside of Pennsylvania.

On April 1, 1964, Judge R. P. ALEXANDER entered an order sustaining the preliminary objections and holding that the court lacked jurisdiction over the New York corporation. Approximately one week later, Judge ALEXANDER issued another order, accompanied by a memorandum opinion, vacating the order of April 1, 1964, and giving Botwinick "leave to schedule depositions or otherwise attempt to support its position relative to the jurisdiction of the court in this case" and further directing that the preliminary objections be continued for argument pending the taking of such depositions. Thereafter, Botwinick took the deposition of one Herbert Janis, manager of the Pennsylvania corporation. On January 7, 1965, Judge WEINROTT entered an order dismissing the preliminary objections. From this order the present appeal was taken.

In his opinion, inter alia, Judge WEINROTT noted: ". . . [T]he testimony of the credit manager [Janis] establishes ample activity and interaction between the companies [i.e., the New York corporation and the Pennsylvania corporation] to warrant and justify the claim of jurisdiction and a finding that the New York company was operating in Pennsylvania under the Business Corporation Law."

Disposition of this appeal requires consideration of Pa. R. C. P. 2180(a)(2),[2] which provides, inter alia:

---

[2] It was under this Rule that service of process was made. No attempt was made to serve the Secretary of the Commonwealth under §1011 of the Business Corporation Law, Act of May 5, 1933, P. L. 364, §1011, as amended, 15 P.S. §2852-1011.

*"Service of Process* (a) Service of process within the county in which the action is instituted shall be made upon a corporation or similar entity by the sheriff of that county by handing a copy thereof . . . . (1) to an executive officer, partner or trustee of the corporation or similar entity; or (2) to an agent or person for the time being in charge of, and only at, *any office or usual place of business of* the corporation or similar entity . . . ." (Emphasis supplied.)

Specifically, was 1218 Chestnut Street, Philadelphia, the "office or usual place of business of" the New York corporation at the time of this service?[3]

Botwinick, in seeking to establish venue[4] in Philadelphia County for its action against the New York corporation, takes the position that it is the New York corporation, not the Pennsylvania corporation, which conducts the business at 1218 Chestnut Street and that the Pennsylvania corporation is simply an "alter ego", a "shadow" or a facade of the New York corporation.

It is clear that, absent some "entry" or "presence" within the state by the conduct of at least minimal business activity within the state by this New York corporation, Pennsylvania, consistent with the limitations of due process, could not exercise any jurisdiction over this foreign corporation: *International Shoe Co. v. Washington*, 326 U.S. 310, 66 S. Ct. 154; *Hanson v. Denckla*, 357 U.S. 235, 78 S. Ct. 1228. "Doing business"

---

[3] A sheriff's return of service is not conclusive where a foreign corporation is involved: *O.A.C. Hagen Corporation v. Empire Sheet & Tin Plate Co.*, 337 Pa. 232, 233, 11 A. 2d 144. Cf. *Hollinger v. Hollinger*, 416 Pa. 473, 206 A. 2d 1.

[4] Venue for a personal action against a corporation is prescribed by Pa. R. C. P. 2179(a) : (1) the county where the corporation has its registered office or principal place of business, (2) a county where the corporation regularly conducts business, (3) the county where the cause of action arose, or (4) a county where a transaction or occurrence took place out of which the cause of action arose.

within the state has a dual significance: (a) it is essential to the exercise of any *jurisdiction* by the state over a foreign corporation and (b) it is essential in determining the appropriate *venue* for an action against a foreign corporation.[5]

While it is undisputed that the New York corporation was not registered and had no certificate of authority from the Department of State to "do business" in Pennsylvania, the question has been raised whether *in fact* the New York corporation was "doing business" within the Commonwealth. Section 1011 C of the Business Corporation Law,[6] defines what shall constitute "doing business": "For the purposes of determining jurisdictions of courts within this Commonwealth, the entry of any corporation into this Commonwealth for the doing of a series of similar acts for the purpose of thereby realizing pecuniary benefit or otherwise accomplishing an object, *or doing a single act in this Commonwealth for such purpose,* with the intention of thereby initiating a series of such acts, shall constitute 'doing business'." (Emphasis added).

The record contains only the testimony of Mr. Janis, manager of the Pennsylvania corporation. From such testimony certain facts indicate the existence of a close relationship between the New York and Pennsylvania corporations: (a) both corporations use the same forms of subscribers' contracts; (b) the letterhead of the Pennsylvania corporation reads "Credit Exchange, Inc., 1218 Chestnut St."; (c) "changes of recommendations" in credit ratings come from the office of the New York corporation under the letterhead

---

[5] *Shambe v. Delaware & Hudson R. Co.*, 288 Pa. 240, 135 A. 755; *International Harvester Co. v. Kentucky*, 234 U.S. 579, 34 S. Ct. 944.

[6] Act of May 5, 1933, P. L. 364, §1011, as amended by the Act of November 10, 1959, P. L. 1406, §1, as amended by the Act of August 13, 1963, P. L. 703, §2, 15 P.S. §2852-1011.

of that corporation; (d) the Pennsylvania corporation's minute books and original records are kept in New York even though the Pennsylvania corporation does not have an office in New York; (e) the same individual is president of both corporations; (f) all the capital stock of the Pennsylvania corporation is owned by the New York corporation. Contraindicating any interdependence between the two corporations are these facts: (a) each corporation is registered and incorporated in a different state; (b) each corporation keeps separate books and financial records; (c) each corporation files separate tax returns; (d) the Pennsylvania corporation pays its own rent and telephone bills and purchases its own supplies; (e) each corporation maintains separate bank accounts; (f) the Pennsylvania corporation owns its own fixtures and furniture and hires and fires its own personnel; (g) Mr. Janis testified that he runs the office at 1218 Chestnut Street, Philadelphia, completely free of control by the New York corporation; (h) there is no mention in the Pennsylvania corporation's minutes of any relationship to the New York Company; (i) the New York corporation supplies only "information" to the Pennsylvania corporation.

Certain facts are clearly and unequivocally established: (a) all the stock of the Pennsylvania corporation is owned by the New York corporation; (b) both corporations have the same president; (c) the Pennsylvania corporation is a subsidiary of the New York corporation; (d) each corporation carefully maintains the integrity of its respective corporate existence separate and apart from the other; (e) the names of the two companies are similar; (f) the letterhead used by the Pennsylvania corporation reads "Credit Exchange, Incorporated, 1218 Chestnut Street"; (g) the trespass action is based on allegedly libelous conduct of the New York corporation and not of the Pennsylvania corpo-

ration and Botwinick does not seek to enforce against the Pennsylvania corporation any liability of the New York corporation; (h) there is no allegation that the subsidiary Pennsylvania corporation was used as an instrumentality by the New York corporation to accomplish any illegal, fraudulent or dishonest purpose.

The leading case on this general subject is *Cannon Manufacturing Co. v. Cudahy Packing Co.*, 267 U.S. 333, 45 S. Ct. 250. Cannon sued Cudahy Packing Company, a Maine corporation, in North Carolina. Service of process was made in North Carolina upon Cudahy Packing Company of Alabama, a subsidiary of the Maine corporation. To show the Maine corporation was doing business in North Carolina, Cannon sought to show the identity pro hac vice between the Maine and Alabama corporations. The Maine corporation owned all the capital stock of the Alabama corporation and "the [Maine corporation] dominate[d] the Alabama corporation, immediately and completely"; the Alabama corporation marketed the products of the Maine corporation not as agent but as a subsidiary and bought such products from the Maine corporation and sold such products to dealers. Each corporation maintained its corporate identity separately and distinctly. The United States Supreme Court, speaking through the late Mr. Justice BRANDEIS, refused to ignore the corporate existence, carefully maintained, in determining the existence of jurisdiction and set aside the service made on the subsidiary corporation, stating, inter alia: "Such use of a subsidiary does not subject the parent corporation to the jurisdiction" of North Carolina and "The corporate separation, though perhaps merely formal, was real. It was not pure fiction" (267 U.S. at p. 337). See also: *Cons. Textile Corp. v. Gregory*, 289 U.S. 85, 53 S. Ct. 529; *Philadelphia & Reading Ry. Co. v. McKibbin*, 243 U.S. 264, 37 S. Ct. 280; *Peterson v. Chicago, etc., R. Co.*, 205 U.S. 364, 27

S. Ct. 513; *Blount v. Peerless Chemical (P.R.) Inc.,* 316 F. 2d 695, 698, 699; *Hendricks v. Alcoa Steamship Co.,* 203 F. Supp. 33; *Farr's, Inc. v. National Shoes, Inc.,* 191 F. Supp. 803; 104 U. Pa. L. Rev. pp. 403-406; 18 A.L.R. 2d 193 et seq. Such exceptions as there are to this rule are presently inapposite: *Dam v. General Electric Co.,* 111 F. Supp. 342.

Neither the similarity of names between the parent and subsidiary corporation (*Moorhead v. Curtis Publishing Co.,* 43 F. Supp. 67), nor the total ownership of the stock of the subsidiary by the parent (*Cannon,* supra; *Moorhead,* supra; *Technograph Printed Circuits, Ltd. v. Epsco, Inc.,* 224 F. Supp. 260) nor the fact that a single individual is the active chief executive of both corporations (*Hendricks,* supra; *Technograph,* supra) will per se justify a court in piercing the corporate veil if each corporation maintains a bona fide separate and distinct corporate existence.

There is a well recognized exception to these general rules if the record demonstrates that the subsidiary is the "alter ego" of the parent to the extent that domination and control by the parent corporation renders the subsidiary a mere instrumentality of the parent; under such extreme circumstances the parent corporation may be held to be doing business within the state under the facade of the subsidiary: *Mas v. Orange-Crush Co.,* 99 F. 2d 675; *Cutler v. Cutler Hammer Mfg. Co.,* 266 F. 388; *United Steelworkers v. Copperweld Steel Co.,* 230 F. Supp. 383, 388, and cases therein cited. The court below held that the Pennsylvania corporation in the case at bar was the "alter ego" of the New York corporation. Our reading of the record finds no justification for such conclusion.

Botwinick relies upon *Rumig v. Ripley Manufacturing Corporation,* 366 Pa. 343, 77 A. 2d 360; *Convery v. Clairol, Inc.,* 123 F. Supp. 29; *Mays v. Oxford Paper Co.,* 195 F. Supp. 414; *Solt v. Interstate Folding Box*

*Co.*, 133 F. Supp. 7; and *Williams v. Rose*, 403 Pa. 619, 170 A. 2d 577. In our view, such authorities are presently inapposite. In *Rumig*, the trespass suit was bottomed on the tort responsibility of the lessee of certain premises and the evidence clearly indicated that it was the parent foreign corporation which, prior to the incorporation of the domestic subsidiary corporation, had negotiated this lease, that the subsidiary was created for the purpose of acting as the nominal lessee and that the subsidiary was simply the "shadow" of the parent corporation. In *Convery*, the foreign corporation, through an agency in the state, was actively engaged in doing business. In *Mays*, the foreign corporation, through two of its salaried representatives who visited customers within the state, was actively doing business within the state. In *Solt*, the foreign corporation had an office within the state regularly used by its salesmen, when not on the "road", had its name in the telephone directory and on the entrance to the building and was actively in business. In *Williams*, the foreign corporation had engaged in activities in the state and its formation was part of the alleged fraud which formed the basis of the equity action.

We are convinced from the instant record that the Pennsylvania corporation was not a mere fiction but maintained carefully its separate corporate existence; that, in substance, there were two separate entities and that the Pennsylvania corporation, even though a subsidiary of the New York corporation, was not a mere instrumentality of the latter. Under the authorities, supra, the New York corporation cannot be said to have been "doing business" within Pennsylvania so as to be subject to the regulatory power of Pennsylvania.

Moreover, the evidence points unequivocally to 1218 Chestnut Street, Philadelphia, as the "office" or "usual place of business" of the Pennsylvania, not the New York, corporation. Therefore, on the state of this rec-

ord, the attempted service of this trespass complaint at 1218 Chestnut Street, Philadelphia, under Rule 2180 (a)(2) must be set aside.

Lastly, Botwinick urges upon us the well established rule, lately re-enunciated in *Williams,* supra (p. 622) that, when preliminary objections, if sustained, would result in dismissal of the action, such objections should be sustained only in cases clear and free from doubt. The factual situation in the case at bar is such that it is clear that these preliminary objections must be sustained.

Order reversed.