**Charles M. FRALEY, Plaintiff,**

v.

**The CHESAPEAKE AND OHIO RAIL-WAY COMPANY, Defendant.**

**Civ. A. No. 66–415.**

United States District Court
W. D. Pennsylvania.

Feb. 23, 1967.

James E. McLaughlin, McArdle, Harrington, Feeney & McLaughlin, Pittsburgh, Pa., for plaintiff.

Edward V. Buckley, Mercer & Buckley, Pittsburgh, Pa., for defendant.

## OPINION

DUMBAULD, District Judge.

Apart from possible repercussions upon interstate commerce,[1] the same criteria apply to railroads as to other industries in determining whether their activities within a particular jurisdiction are sufficient to subject them to suit there.

If therefore the Chesapeake and Ohio Railway Company (hereinafter called C. & O.) were engaged in an equipment rental business, leasing locomotives to other rail carriers for economic gain, just as Hertz, Avis, U-Haul, and other lessors of motor vehicles engage in the business of rental of such vehicles, it as well as they could be subjected to jurisdiction in Pennsylvania under the terms of 15 P.S. § 2852–1011, subds. C. and D.; International Shoe Co. v. State of Washington, 326 U.S. 310, 316, 66 S.Ct. 154, 90 L.Ed. 95 (1945).

1. Green v. Chicago, B. & Q. Ry. Co., 205 U.S. 530, 533, 27 S.Ct. 595, 51 L.Ed. 916 (1907); Philadelphia & Reading Ry. Co. v. McKibbin, 243 U.S. 264, 268, 37 S.Ct. 280, 61 L.Ed. 710 (1917); Davis v. Farmers Co-operative, Equity Co., 262 U.S. 312, 315, 43 S.Ct. 556, 67 L.Ed. 996 (1923).

However, we are not persuaded on the present record that such a situation exists.

It is true that C. & O. locomotives are rented to the B. & O. at a rental of $50 or $60 per day (depending on the size of the engine). However, from the scanty evidence available, it appears that this charge is pursuant to interline arrangements formulated by the Association of American Railroads, similar to the nominal per diem charge for interchanged cars.

The locomotive rentals appear to be merely incidental to carrier operation, and not to constitute a separate, independent business. The business of a railroad of course is primarily transportation. In the case of the C. & O. such primary business is carried on outside Pennsylvania. It has no rail lines owned or operated within this Commonwealth.

We do not have a situation such as Union Pacific's operations in the oil business, or C. & O.'s operation of a hotel at White Sulphur. Likewise, since the carrier's primary "product" is transportation service, and not the distribution of a physical commodity such as grinding wheels, pumps or machinery, the situation is not the same as in Frisch v. Alexson Equipment Corporation, 423 Pa. 247, 251–254, 224 A.2d 183 (1966), where the defendant's acts were considered as constituting the doing of business in Pennsylvania.

Hence we conclude that the locomotive rentals constitute merely an incidental feature of defendant's railroad operations, carried on outside Pennsylvania, and not a separate rental business which would subject defendant to judicial jurisdiction within this District.

As far as the unification of the C. & O. and B. & O. under the I.C.C. order of December 17, 1962, 317 I.C.C. 261, is concerned, we find that what the Commission approved was merely a stock acquisition, and that no closer type of relationship or merger can be effected without further Commission approval. The corporate formalities are carefully and bona fide observed, and there is no occasion for penetrating the veil of separate corporate entity. Cannon Mfg. Co. v. Cudahy Packing Co., 267 U.S. 333, 336–337, 45 S.Ct. 250, 69 L.Ed. 634 (1925); Botwinick v. Credit Exchange, 419 Pa. 65, 69–72, 213 A.2d 349 (1965).

Accordingly, the action must be dismissed.