**INDIAN COFFEE CORP., a corporation, and Penn-Western Food Corp., a corporation, Plaintiffs,**

v.

**The PROCTER & GAMBLE COMPANY, a corporation, and The Folger Coffee Company, a corporation, Defendants.**

Civ. A. No. 76–1362.

United States District Court,
W. D. Pennsylvania.

Jan. 14, 1980.

See also, D.C., 482 F.Supp. 1104.

John L. Laubach, Jr., Stevens, Clark, Laubach & Semple, Pittsburgh, Pa., for plaintiffs.

William Aluah Stewart, III, Cloyd R. Mellott, John W. Ubinger, Jr., Eckert, Seamans, Cherin & Mellott, Pittsburgh, Pa., John W. Beatty, Edward W. Merkel, Jr., Mark Silbersack, Dinsmore, Shohl, Coates & Deupree, Cincinnati, Ohio, for defendants.

## OPINION

DIAMOND, District Judge.

Plaintiffs, Indian Coffee Corporation (Indian) and its wholly-owned subsidiary Penn-Western Food Corporation (Penn-Western), filed this suit alleging that the defendants, The Procter & Gamble Company (Procter & Gamble) and its wholly-owned subsidiary The Folger Coffee Company (Folger), violated § 2(a) of the Clayton Act, as amended by the Robinson-Patman Act, 15 U.S.C. § 13(a), by granting discriminatory prices in the sale of "Folger's" brand coffee in the Cleveland-Pittsburgh market area during 1971–1974.

Two defense motions are presently before the court. The first, made by both defendants, requests that summary judgment be entered as to all of Penn-Western's claims on the ground that it lacks standing to bring the instant suit. The second, filed by only defendant Procter & Gamble, seeks a dismissal of the complaint as to Procter & Gamble for lack of in personam jurisdiction over it. For the reasons set forth below, we will grant both motions.

## I. THE MOTION FOR SUMMARY JUDGMENT

In the motion for summary judgment, the defendants contend that Penn-Western's cause of action was one of the many assets it sold to Wechsler Penn Coffee Corporation (Wechsler), and that, therefore, Penn-Western has no standing to bring this suit.

[1] The defendants' motion is based on the plaintiffs' amended complaint and the written contract attached thereto entitled "Sale And Purchase Of Assets" (Agreement) among Indian Coffee Corporation, Penn-Western Food Corporation and Wechsler-Penn Coffee Corporation. Of course, therefore, there is no genuine issue as to any material fact concerning the existence and contents of the Agreement, Rule 56 Fed.R.Civ.P. The plaintiffs have submitted the affidavit of one James H. Deily, a shareholder of Indian and officer and director of both Indian and Penn-Western. To this affidavit was attached, as exhibit 1, a copy of an "Assignment and Bill of Sale" from Indian and Penn-Western to Wechsler dated April 5, 1974. From our examination of the foregoing, we conclude that there is no genuine issue of material fact regarding the alleged transfer of the right to this cause of action from Penn-Western to Wechsler; that it was in fact transferred, and, therefore, the motion for summary judgment must be granted.

Prior to April 5, 1974, Indian and Penn-Western were engaged in the production of coffee for sale in this region. On that date, however, they sold most of the assets related to their respective coffee businesses to Wechsler. The assets that were to be transferred in the sale were listed generally in ¶ 1 of the Agreement and its related sub-paragraphs. After setting forth a series of specific properties included in the sale, ¶ 1 concludes with the provision that:

1.10 All other properties and assets of sellers as the same exists on the date hereof, such as office supplies, promotional materials, display materials, fixtures, processes, customer lists, leasehold improvements, excluding, however . . (iv) any monetary award or other damages recovered by Indian in connection with the proceedings instituted by it and pending before the Federal Trade Commission or any *civil action* or any settlement fee or award related thereto . . (emphasis supplied).

The only other relevant portion of the contract is ¶ 14 entitled "Miscellaneous", specifically ¶ 14.8 entitled "Reservation By Sellers" which provides:

14.8 Reservation By Sellers. It is specifically understood and agreed that Indian shall retain all of its right, title and interest in its claim filed with the Federal Trade Commission, which proceedings commenced by Indian are still pending. Indian, in addition, shall retain all right to any civil action which may be hereinafter instituted, as well as to the proceeds of any settlement negotiated with any of its competitors in connection therewith . . . .

Those two provisions make it clear, defendants argue, that the parties to the Agreement contemplated that anti-trust suits might arise as a result of activities by plaintiffs' competitors, but that only Indian excepted and reserved the right to retain and maintain any preexisting right of action following the sale.

Plaintiffs counter with three basic arguments. First, they say that a chose in action was not the sort of asset referred to in the catch-all provisions of ¶ 1.10. They argue in their brief that the language "such as office supplies, promotional materials, display materials . . ." contemplated the transfer of ". . . trade assets, not assets of a non-essential, non-business nature," and that law suits, unlike office supplies, and the like, are not trade assets.

Their second, and most persistently urged, argument is that even if ¶ 1.10 did have the legal effect of transferring rights to maintain law suits, the parties did not *intend* for it to do so. In support of that position, plaintiffs submitted the affidavit of James A. Deily. Deily, an officer and director of both Indian and Penn-Western, states that he was present at the April 5,

1974, closing and that the parties understood that no litigation rights were being transferred. Plaintiffs contend that this view of the transaction is substantiated by Deily's further affirmation that Wechsler has known about the present law suit since August of 1977, but that to date it has never received or requested any records relative to this case, has never sought to intervene in this litigation, and has never indicated that it believed that Penn-Western's maintenance of this action constituted a breach of the April 4, 1975, agreement of sale. It is clear from this affidavit, say plaintiffs, that the defendants' construction of the contract is a highly technical one and is at variance with the transaction as contemplated and performed by the parties.

Finally, plaintiffs argue that even if the parties *intended* to transfer Penn-Western's chose in action, Wechsler's lack of involvement indicates that this portion of the agreement was never performed and, therefore, the right to maintain the suit remains in Penn-Western.

We are not persuaded by plaintiffs' arguments. First, it is clear to us that ¶ 1.10 did have the legal effect of transferring Penn-Western's cause of action. While it may be, as plaintiffs argue, that a chose in action is so different from the other assets enumerated in the "such as" clause of ¶ 1.10 that one would not ordinarily include it therein, that argument loses weight in light of other language in the agreement. For instance, the exclusionary clause of ¶ 1.10 which follows the "such as" phrase indicates that the drafters felt that the preceding language did include, inter alia, a "civil action," for they made it a point, but as *to Indian only*, to specifically exclude it from transfer. The same is true under, ¶ 14.8, "Reservation By Sellers" where they specifically reserve, but, again, as *to Indian only* ". . . all right to any civil action which may be hereinafter instituted . . . ." We find this to be compelling evidence that the parties believed and intended that the conveying language of the agreement include future law suits as to both Indian and Penn-Western.

As to plaintiffs' contention that the parties did not *intend* that the agreement convey Penn-Western's chose in action, we do not believe that the record contains sufficient facts to permit such a conclusion, or to raise a genuine issue of material fact in that regard. It is true, of course, that the interpretation given a contract by its signators is generally favored by the courts. 4 Williston on Contracts (4th ed.) § 623. However, in view of the plain language of the agreement, the onus of proving that the parties intended something different is on plaintiffs. Here, however, they have not cited facts sufficient for us to conclude that there is even a genuine issue of a material fact relating to the interpretation which the parties placed on the agreement. Instead, Penn-Western simply makes the bald assertion that the agreement was not intended to convey its claim, and provides us with no information by affidavit or otherwise regarding the circumstances and discussions which led to the drafting of ¶¶ 1.10 and 14.8.

Secondly, we note that plaintiffs have only offered *their* interpretation of the contract. We have no affirmative indication on the record regarding Wechsler's interpretation. Instead, we are asked to draw inferences as to Wechsler's motive, intent, and interpretation from what it did not say or do. This we decline to do. For, assuming, as plaintiffs contend, that Wechsler has expressed no interest whatever in this suit, that fact is ambiguous at best and could indicate, inter alia, that Wechsler has little faith in the merits of the claim, or a belief that the cause of action is not theirs or any number of other things.

Plaintiffs' final argument that regardless of the parties' intent, since Wechsler in fact has not requested transfer of the various documents relating to the suit, it, therefore, still remains with Penn-Western, is not legally or logically sound for the same reasons we expressed in rejecting their second point. Because Wechsler has apparently failed to request transfer of "records, ledgers, and other information necessary to maintain this law suit," plaintiffs want us

to conclude that Wechsler did not believe it was owner of the chose. But those tangible items are to be distinguished from the chose in action whose transfer is at issue here. And it is clear that Penn-Western could have assigned the cause of action the instant it executed the agreement of sale without the physical transfer of any tangible documents related thereto. Therefore, the fact that the transferee did not demand transfer of physical documents is no indication that it did not believe that the chose was to be, or had been, transferred.

In accordance with the above, the motion to dismiss Penn-Western's claim for lack of standing will be granted at this time.

## II. THE MOTION TO DISMISS

The question raised by this motion is whether or not the defendant, The Procter & Gamble Company is amenable to the process and, therefore, the jurisdiction, of this court.

The defendant contends that it is an unregistered foreign corporation having no presence in the Commonwealth of Pennsylvania and, therefore, not subject to suit in federal or state courts here. The plaintiffs contend that Procter & Gamble Company has done business, indeed the very business at issue in this suit, in Pennsylvania, and is, therefore, subject to our process.

■ Plaintiff has the burden of proving the existence of jurisdiction over the person of the defendant. *McNutt v. G. M. A. C.*, 298 U.S. 178, 56 S.Ct. 780, 80 L.Ed. 1135 (1936); *McSparran v. Weist*, 402 F.2d 867 (3rd Cir. 1968).

■ There appears to be no question that the defendant, The Procter & Gamble Company, is an Ohio corporation with its principal place of business in Cincinnati, Ohio, and that it is not registered to transact business in the Commonwealth of Pennsylvania.[1]

Since The Procter & Gamble Company is an unregistered foreign corporation, personal service on, and jurisdiction over, it must be obtained in accordance with Pennsylvania statutes pertaining to such service. Rule 4(e) Fed.R.Civ.P. In this instance that is the so-called "long-arm" statute of Pennsylvania, 42 Pa.C.S.A. § 8309.[2] Before it is subject to service under that statute, the foreign corporation must be doing business, within the meaning of the statute, in Pennsylvania.

Plaintiffs attempt in several ways to establish by affidavit and argument that the defendant, The Procter & Gamble Company, was doing business in Pennsylvania in 1973 and 1974, the times relevant here. Plaintiffs contend, and defendants do not dispute, the following. During 1973 and 1974 a substantial promotional campaign

---

1. Paragraph 2 of the Affidavit of James W. Nethercott, Senior Vice President and Secretary of The Procter & Gamble Company, dated 17 January, 1978, which paragraph is not contradicted in any way by plaintiffs.

2. The Pennsylvania long-arm has subsequently been amended, but 42 Pa.C.S.A. § 8309 was in effect at the time this action was filed. Its complete text reads as follows:

   § 8309. *Acts affecting jurisdiction.*

   (a) *General rule.*—Any of the following shall constitute "doing business" for the purposes of this chapter:

   (1) The doing by any person in this Commonwealth of a series of similar acts for the purpose of thereby realizing pecuniary benefit or otherwise accomplishing an object.

   (2) The doing of a single act in this Commonwealth for the purpose of thereby realizing pecuniary benefit or otherwise accom-

plishing an object with the intention of initiating a series of such acts.

(3) The shipping of merchandise directly or indirectly into or through this Commonwealth.

(4) The engaging in any business or profession within this Commonwealth, whether or not such business requires license or approval by the Commonwealth or any of its agencies.

(5) The ownership, use or possession of any real property situate within this Commonwealth.

(b) *Exercise of full constitutional power over foreign corporations.*—In addition to the provisions of subsection (a) of this section the jurisdiction and venue of courts of the Commonwealth shall extend to all foreign corporations and the powers exercised by them to the fullest extent allowed under the Constitution of the United States.

was conducted in the Pittsburgh, Pennsylvania, area on behalf of Folger's Coffee, a product of the defendant, The Folger Coffee Company, a wholly-owned subsidiary of the defendant, The Procter & Gamble Company. As part of that campaign, coupons advertising Folger's Coffee and offering savings on the purchase of that product were distributed to the general public within the Pittsburgh, Pennsylvania, area.

Some of the coupons which offered certain "cents off" the regular price of Folger's coffee contained the words "From Procter & Gamble," imprinted thereon; others contained the statement that they could be redeemed by sending them to "Procter & Gamble, 2150 Sunnybrook Drive, Cincinnati, Ohio 45237."

The plaintiffs argue from the foregoing, particularly from the appearance of the name "Procter & Gamble" on the coupons, the redemption address, and the wholly-owned subsidiary status of Folger that the defendant, Procter & Gamble, was doing business in Pennsylvania. Plaintiffs offer no other basis or argument for jurisdiction.

Defendant, The Procter & Gamble Company does not dispute any of the foregoing facts or that they are sufficient evidence of doing business. Their point, and we believe it is well-taken, is that plaintiffs have the wrong "Procter & Gamble."

Through the affidavits of James W. Nethercott (see fn. 1) and the affidavit of Charles F. Clark, Comptroller of defendant, The Folger Coffee Company, the defendant, The Procter & Gamble Company, has established, inter alia, that:

1. The Procter & Gamble *Company* is an Ohio corporation with its principal place of business in Cincinnati, Ohio, and is not registered in Pennsylvania.

2. The Procter & Gamble *Company* has no office, agent, telephone listing, bank account, plant, real or other property in Pennsylvania.

3. It does business in Ohio, and all of its 10,000 employees are located there, including all of its officers.

4. The Folger Coffee Company is a wholly-owned subsidiary of the Procter & Gamble Company.

5. Folgers processes and sells coffee; The Procter & Gamble Company never has done so.

6. The Procter & Gamble *Distributing Company* (Distributing Co.) is an Ohio corporation having its principal office in Cincinnati, Ohio. It is a wholly-owned subsidiary of The Procter & Gamble Company.

7. Distributing Co. and Folger have their own board of directors, officers and employees, who determine their policies and carry on their business and who have independent responsibilities for the management of their business, including control over day-to-day operations.

8. The Procter & Gamble *Company* did not participate in any way in the distribution of the coupons in question, rather it was Folger and Distributing Co. which were solely responsible.

9. The name "Procter & Gamble" is a trade name and not the name of any particular corporate entity.

10. The address "Procter & Gamble, 2150 Sunnybrook Drive, Cincinnati, Ohio 45237" is the address of a coupon processing center operated by The Procter & Gamble *Distributing Company.*

11. Folger paid Distributing Co. for all its expenses incurred in processing the coupons in question.

Plaintiffs offered no direct rebuttal or counter-affidavit to any of the foregoing factual assertions. Instead they urge, in effect, that we find that The Procter & Gamble *Company* was doing business here because of the appearance of the name "Procter & Gamble" on the coupons and because of the wholly-owned subsidiary status of Folgers, and, perhaps, Distributing Co. However, the proofs are to the contrary and we find that not only was The Procter & Gamble Company not doing business in Pennsylvania, it was not doing anything here.

The foregoing does not end our inquiry into the matter of in personam jurisdiction. It is well settled that even though a parent foreign corporation is not personally "doing business" in a state it may be deemed to be vicariously present if a subsidiary that is personally "doing business" in the state is a mere "alter ego" of the parent. See generally 2 Moore's Federal Practice § 4.25(6). Thus, if Folger or Distributing Co. was merely the "alter ego" of Procter & Gamble, in personam jurisdiction would exist here.

However, establishing an "alter ego" relationship between parent and subsidiary for jurisdictional purposes is not an easy task. The Supreme Court declared in *Cannon Mfg. Co. v. Cudahy Packing Co.*, 267 U.S. 333, 45 S.Ct. 250, 69 L.Ed. 634 (1925) that so long as the separation between parent and subsidiary is real, though perhaps just a formality, it cannot be said that the one corporation is the alter ego of the other. In *Cannon*, jurisdiction was sought in North Carolina over a Maine corporation which had created a subsidiary corporation to market its goods in North Carolina. The parent corporation marketed its goods in several other states directly rather than through separate corporations. Although noting that the Maine corporation "dominates the [subsidiary] corporation, immediately and completely; and exerts its control both commercially and financially in substantially the same way, and mainly through the same individuals, as it does over those selling branches or departments not separately incorporated which are established to market the Cudahy products in other states," (267 U.S. at 335, 45 S.Ct. at 251) the Court refused to pierce the corporate veil, saying that, because the two entities' books and transactions generally evidenced a maintenance of recognized corporate formalities, "[t]he corporate separation, though perhaps merely formal, was real." 267 U.S. at 337, 45 S.Ct. at 251. Pennsylvania, like most jurisdictions, has adopted the *Cannon* rule. See *Botwinick v. Credit Exchange, Inc.*, 419 Pa. 65, 213 A.2d 349 (1965).

In the instant case, defendant The Procter & Gamble Company has established by affidavits that the directors, board meetings, shareholder meetings, records, accounts, tax returns, and decisions concerning day-to-day operations of its two subsidiaries, Folger and Distributing Co., are entirely separate from Procter & Gamble. Again, plaintiffs have failed to produce any evidence from which we could conclude otherwise, i. e., that the corporate separation was not real. Therefore, we will grant defendant The Procter & Gamble Company's motion to dismiss.