UNITED STEELWORKERS OF AMERI-
CA, an unincorporated association,
and
United Steelworkers of America, Local
Union No. 171, an unincorporated
association, Plaintiffs,

v.

COPPERWELD STEEL COMPANY, a
Pennsylvania Corporation, Superior
Steel Corporation, a Delaware Corpo-
ration, and Fulton Industries, Incorpo-
rated, a Georgia Corporation, Defend-
ants.

Civ. A. No. 63–371.

United States District Court
W. D. Pennsylvania.

May 28, 1964.

**384**

Leo I. Shapiro, Morton B. DeBroff, Pittsburgh, Pa., for plaintiffs.

Elliott W. Finkel, John G. Wayman, Leonard L. Scheinholtz, Pittsburgh, Pa., for Copperweld.

Alfred James Duff, Malcolm Hay, Pittsburgh, Pa., for Fulton.

Charles C. Hewitt, Eli Krivoshia, Jr., Pittsburgh, Pa., for Superior.

JOHN L. MILLER, District Judge.

This is an action filed by plaintiffs, United Steelworkers of America and its Local Union No. 171, against Copperweld Steel Company (Copperweld), Superior Steel Company (New Superior) and Fulton Industries (Fulton) under Section 301 of the Labor Management Relations Act of 1947, 29 U.S.C. § 185, whereby plaintiffs seek to enforce the pension, insurance and vacation pay rights of approximately nine hundred production and maintenance workers under various collective bargaining agreements with Copperweld. Plaintiffs are the authorized collective bargaining representatives for those employees at the Superior Steel plant in Scott Township, Allegheny County, Pennsylvania.

The dispute arises from the termination of operations at the New Superior Steel plant on the 30th of March 1962. On November 30, 1957, Superior Steel Corporation (Old Superior), which had owned and operated the plant theretofore, was merged into Copperweld, which thereafter and until December 15, 1961, owned and operated the plant as its Superior Steel Division. Subsequent to the merger, Copperweld assumed the rights, liabilities and obligations of Old Superior under the collective bargaining agreements in effect between plaintiffs and Old Superior.

On January 4, 1960, Copperweld entered into a new collective bargaining agreement, an insurance agreement and a pension agreement with plaintiff United Steelworkers on behalf of plaintiff Local. Under the terms of the insurance agreement, Copperweld or its successors agreed to provide life insurance and sickness and accident, hospitalization and surgical and diagnostic benefits for bargaining unit employees of Superior Steel Division. Pursuant to the terms of the pension agreement, Copperweld established a pension trust fund to satisfy its pension obligations to the Superior plant employees.

On November 30, 1961, Copperweld entered into an agreement for the sale of its Superior plant, including all of its right, title and interest in the bargaining unit pension agreement and the assets subject thereto. The buyer agreed to assume the liability and obligation of Copperweld's Superior Steel Division pursuant to that pension agreement, with an exception not applicable here.

It is alleged in the complaint, but denied by defendant Fulton, that the buyer under that sales agreement was Fulton Industries and that during December 1961, Fulton organized New Superior as its subsidiary and assigned the sales agreement to it. Thereafter New Superior owned and operated the plant and succeeded to the status and position of

Copperweld under the basic insurance and pension agreements. On March 29, 1962, New Superior notified all bargaining unit employees that their employment would be permanently terminated effective March 30, 1962.

On June 5, 1962, Copperweld and New Superior modified the sales agreement of November 30, 1961, thereby releasing New Superior from any liability and obligation under the pension agreement. Copperweld assumed and agreed to pay every liability of New Superior arising under the pension agreement to and including June 30, 1962, the expiration date of the basic agreement with plaintiffs.

Now before the Court are motions to dismiss filed by each of the defendants. The motion of defendant Copperweld is based on the ground that plaintiffs have failed to join indispensable parties, to wit, the several hundred individuals whose claims plaintiffs seek to enforce. The motion of defendant Fulton is based on the Court's lack of jurisdiction over the person of defendant Fulton, the insufficiency of the service of process and the lack of proper venue. The motion of defendant New Superior is based upon the failure of the complaint to state a cause of action upon which relief can be granted and the lack of jurisdiction over the subject matter.

## COPPERWELD'S MOTION

Defendant Copperweld contends that the complaint should be dismissed for failure of plaintiffs to join the individual employees because this action seeks to enforce the uniquely personal rights of those employees and the Court lacks jurisdiction of such actions under Section 301. Defendant Copperweld's position presents two questions for our determination: (1) Does this Court have jurisdiction of actions wherein the Union seeks to enforce the uniquely personal rights of its individual members? (2) If we have jurisdiction, are the individual Union members indispensable parties to the action?

The contention of defendant Copperweld that Section 301 does not give the Court jurisdiction of this type of action was upheld by the Supreme Court in Association of Westinghouse Salaried Employees v. Westinghouse Electric Corp., 348 U.S. 437, 75 S.Ct. 489, 99 L.Ed. 510 (1955), rehearing denied 349 U.S. 925, 75 S.Ct. 657, 99 L.Ed. 1256 (1955), for various reasons. While no one reason or theory for the decision in that case gained the support of a majority of the Justices, subsequently the Courts agreed that Section 301 did not confer jurisdiction of actions in which the Union sought to enforce the uniquely personal or individual contractual rights of its members. See United Steelworkers v. Pullman-Standard Car Manufacturing Co., 241 F.2d 547 (3 Cir. 1957); Garfield Local 13–566, etc. v. Heyden Newport Corp., 172 F.Supp. 230 (N.J.1959); Local Lodge 2040, I.A.M. v. Servel, Inc., 268 F.2d 692 (7 Cir. 1959); United Steelworkers, etc. v. New Park Mining Co., 273 F.2d 352 (10 Cir. 1959). Each of these cases relied upon the authority of the Westinghouse decision.

Since its decision in Westinghouse, the Supreme Court has applied Section 301 to suits to compel arbitration of individual grievances such as rates of pay, hours of work and wrongful discharge, Textile Workers, etc v. Lincoln Mills, 353 U.S. 448, 77 S.Ct. 912, 1 L.Ed.2d 972 (1957), and General Electric Co. v. Local 205, 353 U.S. 547, 77 S.Ct. 921, 1 L.Ed.2d 1028 (1957); to obtain specific enforcement of an arbitrator's award ordering reinstatement and back pay to individual employees, United Steelworkers v. Enterprise Wheel & Car Corp., 363 U.S. 593, 80 S.Ct. 1358, 4 L.Ed.2d 1424 (1960); to recover wage increases, Dowd Box Co. v. Courtney, 368 U.S. 502, 82 S.Ct. 519, 7 L.Ed.2d 483 (1962); and to suits against individual Union members for violation of a no-strike clause in a collective bargaining agreement, Atkinson v. Sinclair Refining Co., 370 U.S. 238, 82 S.Ct. 1318, 8 L.Ed.2d 462 (1962). In Smith v. Evening News Association, 371 U.S. 195, 83

S.Ct. 267, 9 L.Ed.2d 246 (1962), the Supreme Court stated:

"* * * in Association of Westinghouse Salaried Employees v. Westinghouse Corp., 348 U.S. 437, [75 S. Ct. 489, 99 L.Ed. 510], a majority of the Court in three separate opinions concluded that § 301 did not give the federal courts jurisdiction over a suit brought by a union to enforce employee rights which were variously characterized as 'peculiar in the individual benefit which is their subject matter', 'uniquely personal' and arising 'from separate hiring contracts between the employer and each employee.'

"However, subsequent decisions here have removed the underpinnings of Westinghouse and its holding is no longer authoritative as a precedent.

*    *    *    *    *    *

"The concept that all suits to vindicate individual employee rights arising from a collective bargaining contract should be excluded from the coverage of § 301 has thus not survived. The rights of individual employees concerning rates of pay and conditions of employment are a major focus of the negotiation and administration of collective bargaining contracts. Individual claims lie at the heart of the grievance and arbitration machinery, are to a large degree inevitably intertwined with union interests and many times precipitate grave questions concerning the interpretation and enforceability of the collective bargaining contract on which they are based. To exclude these claims from the ambit of § 301 would stultify the congressional policy of having the administration of collective bargaining contracts accomplished under a uniform body of federal substantive law. This we are unwilling to do."

That the Westinghouse decision can no longer be relied upon as authoritative precedent was reiterated by the Court in General Drivers Warehousemen, etc., Union v. Riss & Co., Inc., 372 U.S. 517, 520, 83 S.Ct. 789, 9 L.Ed.2d 918 (1963). Because of the Supreme Court's recent pronouncement on this question, we can not agree with defendant Copperweld's contention regarding our jurisdiction.

Defendant Copperweld further contends that the individual Union members are indispensable parties to this action who must be joined lest defendant be harassed by a multiplicity of subsequent suits. That contention is answered by Section 301(b) of the Labor Management Relations Act of 1947, 29 U.S.C. § 185(b) [1] and Rule 17(a), Federal Rules of Civil Procedure[2].

The rights which plaintiffs seek to enforce in this action arise out of and "are the legal consequences of undertakings embodied in the collective bargaining contract as enforceable promises of the employer made to the union for the benefit of all who may be employees while the collective bargain remains in force." Dissenting opinion of Judge Hastie in Association of Westinghouse Salaried Employees v. Westinghouse Electric Corp., 210 F.2d 623, 631 (3 Cir. 1954). The third party beneficiary nature of collective bargaining agreements was recognized by the Supreme Court in J. I. Case Co. v. N. L. R. B., 321 U.S. 332, 335, 336, 64 S.Ct. 576, 579, 88 L.Ed. 762 (1944):

"After the collective trade agreement is made, the individuals who

1. "(b) * * * Any such labor organization may sue or be sued as an entity and in behalf of the employees whom it represents in the courts of the United States. * * *"

2. "* * * Every action shall be prosecuted in the name of the real party in interest; but * * * a party with whom or in whose name a contract has been made for the benefit of another, or a party authorized by statute may sue in his own name without joining with him the party for whose benefit the action is brought; * * *"

·shall benefit by it are identified by individual hirings.

\*    \*    \*    \*    \*    \*

"But, however engaged, an employee becomes entitled by virtue of the Labor Relations Act somewhat as ·a third party beneficiary to all benefits of the collective trade agreement, ·even if on his own he would yield to less favorable terms."

Thus we can not agree with defendant Copperweld that plaintiffs have failed to join indispensable parties. Plaintiffs, who represented their members in collective bargaining sessions, have brought this action in their own names for the benefit of those individual Union members who are the third party beneficiaries of the contracts out of which this action arises. Plaintiffs therefore are the real parties in interest within the meaning of Rule 17(a). Local 793 v. Auto Specialities Manufacturing Co., 15 F.R. D. 261 (W.D.Mich.S.D.1951). For the reasons stated, the motion of defendant Copperweld to dismiss the complaint must be denied.

### FULTON'S MOTION

Plaintiffs' contention that New Superior was organized by Fulton and was its subsidiary is denied by Fulton. It is Fulton's contention that the Court has no jurisdiction over it because it, as a foreign corporation, has never done any business in Pennsylvania and has never been licensed to do business here. The record for the Court's consideration in this matter includes affidavits filed by Fulton, certain depositions and Fulton's answers to plaintiffs' interrogatories.

The answer to the questions raised by defendant Fulton's motion regarding the service of process, and this Court's juris-diction depends on whether defendant Fulton is doing business in Pennsylvania. If it is determined that service of process was properly effected and that this Court has jurisdiction, the question of venue will be answered by deciding whether defendant Fulton was doing business in the Western District of Pennsylvania. Rule 4(d) (7), Federal Rules of Civil Pro-

cedure, provides that service of process on a foreign corporation is valid if effected in the manner prescribed by the law of the state in which service is made. Service of the complaint in this action was originally made on Fulton Industries, Inc. by handing a copy to David Clayton, as agent of defendant Fulton, at the Superior Steel Corporation plant at Carnegie, Pennsylvania, on May 20, 1963. The affidavit of Ben Kohler, Jr., secretary of defendant Fulton, sets forth, *inter alia,* that Fulton is not and never has been licensed to do business in the Commonwealth of Pennsylvania and that neither David Clayton nor anyone else has been authorized to receive service of process for Fulton. Clayton is not an officer, director, agent or employee of Fulton.

Subsequently substituted service was made by registered mail and upon the Secretary of the Commonwealth. Pennsylvania Business Corporation Law, 15 P.S. § 2852–1011(B), as amended, provides that:

"Any foreign business corporation which shall have done any business in this Commonwealth, without procuring a certificate of authority to do so from the Department of State, shall be conclusively presumed to have designated the Secretary of the Commonwealth as its true and lawful attorney authorized to accept, on its behalf, service of process in any action arising out of acts of omission of such corporation within this Commonwealth."

Sub-section (C) defines the term "doing business" as follows:

" \*    \*    \* [T]he entry of any corporation into this Commonwealth for the doing of a series of similar acts for the purpose of thereby realizing pecuniary benefit or otherwise accomplishing an object, or doing a single act in this Commonwealth for such purpose, with the intention of thereby initiating a series of such acts, shall constitute 'doing business.' "

The affidavit of Ben Kohler sets forth that Fulton:

1. Has not maintained nor does it maintain any office in the Commonwealth of Pennsylvania.

2. Has not maintained nor does it maintain any employees or other agents within the Commonwealth of Pennsylvania.

3. Has not had nor does it have any local telephone listings within the Commonwealth of Pennsylvania.

4. Has not and does not own any real estate in the Commonwealth of Pennsylvania nor has it or does it lease any real estate located therein.

5. Has not and does not own any stock of merchandise or any other personal property in the Commonwealth of Pennsylvania nor has it or does it lease any personal property therein.

6. Has not maintained nor does it maintain any office or warehouse in the Commonwealth of Pennsylvania.

■ Plaintiffs contend, however, that defendant Fulton is doing business in Pennsylvania through New Superior, which is its subsidiary. It is true that if a subsidiary is the alter ego of its parent, if it is so completely dominated and controlled by the parent that it becomes a mere instrumentality of the parent, the parent can be held to be doing business within the Commonwealth through the subsidiary. Such a situation would make the parent corporation subject to the jurisdiction of the courts in the Commonwealth and process could be served in accordance with state law. Rumig v. Ripley Manufacturing Corp., 366 Pa. 343, 77 A.2d 360 (1951); Williams v. Rose, 403 Pa. 619, 170 A.2d 577 (1961); Radio Shack Corp. v. Lafayette Radio Electronics Corp., 182 F.Supp. 717 (Mass.1960). On the other hand, if the subsidiary maintains a corporate identity separate from that of its parent, the courts have held that the parent can not be said to be doing business within the state where the subsidiary is located and thus the parent is not subject to the jurisdiction of the courts in that state. Farr's, Inc. v. National Shoes, Inc., 191 F.Supp. 803 (E.D.Pa.1960); Cannon Manufacturing Co. v. Cudahy Packing Co., 267 U.S. 333, 45 S.Ct. 250, 69 L.Ed. 634 (1925); Harris v. Deere & Co., 223 F.2d 161 (4 Cir. 1955); Berkman v. Ann Lewis Shops, Inc., 246 F.2d 44 (2 Cir. 1957).

In any case, the determination as to whether a defendant is doing business within the jurisdiction of the court depends largely upon the particular facts involved. Williams v. Rose, supra, at 625, of 403 Pa., 170 A.2d 577. The facts in this case, as set forth in the affidavit of Ben Kohler, Jr., reveal that defendant Fulton "has never reflected on its corporate books the business and affairs of" New Superior, that defendant Fulton "has never leased or otherwise made available to" New Superior "any of its properties, real or personal, nor has it been lessee or otherwise in" possession "or control of any properties, real or personal," of New Superior and that neither defendant Fulton, "nor any officer, director, agent or employee thereof has ever controlled or paid any salaries of employees" of New Superior. Also the facts are that defendant Fulton has not "controlled the declaration of any dividend by" New Superior; nor has it or any of its officers, directors, agents or employees "ever had custody or control of any funds or other assets of" New Superior.

In answer to plaintiffs' interrogatories, defendant Fulton denies that it applied for articles of incorporation for New Superior or supplied the funds for the organization of New Superior. The answers also reveal that defendant Fulton owns no stock in New Superior, but that Diversified Industries, Inc., a wholly owned subsidiary of defendant Fulton, owns 48.45% of the common stock and 51% of the non-cumulative, non-voting, preferred stock of New Superior. C. H. Burns and C. W. Armstrong are the Vice President and Treasurer and the Assistant Treasurer, respectively, of defendant

Fulton. Burns is also the Treasurer of New Superior and the Vice President and Treasurer of Diversified Industries, Inc. Armstrong serves as the Assistant Treasurer of Diversified Industries, Inc. The contacts of Burns and Armstrong with employees of New Superior and their visits to the Superior plant at Carnegie have all been in connection with their duties as officers of New Superior or Diversified Industries, Inc.

For us to say that defendant Fulton has been doing business in this Commonwealth sufficient to subject it to this Court's jurisdiction, we must find that New Superior is merely its alter ego. The record now before the Court does not reveal that defendant Fulton has ever exercised such complete domination of the finances, policies and business practices of New Superior so that New Superior has no separate mind, will or existence of its own. Fisser v. International Bank, 282 F.2d 231, 238 (2 Cir. 1960). Indeed, the record tends to support the contention of defendant Fulton that New Superior is not its subsidiary. Even if there is some connection between defendant Fulton and New Superior, the separate corporate identity of the latter has been maintained so that the former can not be said to be doing business in Pennsylvania.

Because we conclude that the service of process was inadequate here and this Court has no jurisdiction over the person of defendant Fulton, it is unnecessary for us to consider the question of venue. For the reasons stated, the motion of defendant Fulton to dismiss the action as to it must be granted.

NEW SUPERIOR'S MOTION

It is the position of defendant New Superior that the complaint should be dismissed because plaintiffs' own allegations therein deny the existence of a contract between plaintiffs and defendant New Superior and thus deny any basis upon which relief can be granted. The collective bargaining agreements at issue in this action were originally made between plaintiffs and defendant Copper-

weld. When the plant was sold by Copperweld, the buyer agreed to assume the obligations and liabilities of Copperweld under the collective bargaining agreements. The sales agreement, with this last provision in it, was assigned to New Superior. Defendant New Superior's contention stems from the averments in paragraph 24 of the complaint which states:

"24. At no time whatsoever did the plaintiff unions or any of the employees whom they represented at the said plant either agree to the sale thereof to Superior, agree to any of the terms and provisions of the said Sales Agreement, relinquish any rights whatsoever which they had, may have had or may or will hereafter have against Copperweld, Superior or Fulton, or agree to the substitution by Superior for or to the status and position of Copperweld, or as successor to Copperweld, under the said Basic Agreement, Pension Agreement and Insurance Agreement, or any of them."

While it is true that the allegations in a complaint must be taken as true, when considering a motion to dismiss, we realize that "a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief". Conley v. Gibson, 355 U.S. 41, 45-46, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957). In that regard, it is no longer the rule that pleadings filed in the federal courts will be construed strictly against the pleaders. De Loach v. Crowley's, Inc., 128 F.2d 378 (5 Cir. 1942). The federal rules require that "[a]ll pleadings shall be so construed as to do substantial justice." Rule 8(f), Federal Rules of Civil Procedure.

An examination of the "Agreement" between plaintiffs and Copperweld (Exhibit A of the Complaint) and the "Insurance and Pension Agreements" (Exhibit B) reveals that, despite the allegations of paragraph 24, the possible

substitution of a successor to each of the parties was contemplated by them at the time the agreements were entered into.[3] Furthermore, it is evident from reading the complaint that defendant New Superior continued the operation of the plant from November 1961, until the termination of operations in 1962, a period of more than four months. During that time, New Superior employed plaintiffs' members and dealt with plaintiffs on the basis of the agreements now in dispute without objection from plaintiffs until the termination notices were sent to the employees. Plaintiffs' willingness to continue operations under the collective bargaining agreement with New Superior, as Copperweld's successor, may indicate their subsequent consent to the assignment of the contract. In such a situation we can not say that it appears beyond doubt that plaintiffs can not prove any facts which would entitle them to relief. Whether they are indeed entitled to any relief in this action can best be determined after a full hearing and development of all the facts.

Defendant New Superior further contends that certain prayers for relief in the complaint should be dismissed because plaintiffs' claim of failure to adequately secure the pension and insurance benefits is *res judicata*, having been determined by a prior adjudication between plaintiffs and defendant New Superior in the Court of Common Pleas of Allegheny County, Pennsylvania. For a prior proceeding to constitute a bar to a subsequent action there must be a judicial determination in the first action of the

same issues sought to be adjudicated in the second and both actions must involve the same parties. Florasynth Laboratories, Inc. v. Goldberg, 191 F.2d 877 (7 Cir. 1951).

Neither the pleadings nor the record of the proceedings which defendant New Superior contends is a bar to this action has been put into evidence before this Court. It is "the general rule that courts will not travel outside a record in order to notice proceedings in another case, even between the same parties in the same court, unless the proceedings are put in evidence." Funk v. Commissioner of Internal Revenue, 163 F.2d 796, 800–801 (3 Cir. 1947).

Even if we were disposed to take judicial notice of those proceedings, however, it would avail defendant nothing.[4] Defendant New Superior contends that a consent decree entered by the Court of Common Pleas constitutes a bar to this action. Under the law of Pennsylvania, a consent decree is not recognized as a judicial determination of the matters in controversy, but "is merely an agreement between the parties—a contract binding the parties thereto to the terms thereof." Universal Builders Supply, Inc. v. Shaler Highlands Corp., 405 Pa. 259, 175 A.2d 58 (1961). By the terms of that decree, nothing therein was to be construed or interpreted to be "an admission or finding concerning any averment contained in plaintiffs' complaint." [5] Without a judicial determination of the issues in controversy, we can not say that the prior proceeding constitutes a bar to any of the matters involved in this

3. "This Agreement * * * (hereinafter referred to as the 'Insurance Agreement') is between SUPERIOR STEEL DIVISION OF COPPERWELD STEEL COMPANY, or its successor * * * and UNITED STEELWORKERS OF AMERICA, or its successor * * * on behalf of LOCAL UNION NO. 171." Preamble, page 3, Agreement between Superior Steel Division of Copperweld Steel Company and United Steelworkers of America Local Union No. 171; pages 3 and 41, Insurance and Pension Agreements.

4. The Complaint, Preliminary Injunction, An Amendment to the Complaint and three Orders of Court at No. 3537 April Term 1962 in Equity, in the Court of Common Pleas of Allegheny County, Pennsylvania, were attached to defendant New Superior's Brief as Exhibits A through F, inclusive.

5. Paragraph 5(c), Order of Court, entered March 28, 1962, at No. 3537 April Term 1962 in Equity, in the Court of Common Pleas of Allegheny County, Pennsylvania.

action. Furthermore paragraphs (A) (3) and (4) and (B) (2), (3); (4) and (5) of plaintiffs' prayer for relief seek not only the adequate funding of the pension and insurance trusts, but also an accounting of those trusts and information relating to the pension and insurance rights of plaintiffs' individual members.

Defendant New Superior also contends that the complaint should be dismissed because the injunctive relief requested by plaintiffs is prohibited by the Norris-LaGuardia Act (29 U.S.C. § 104) and thus the Court lacks jurisdiction over the subject matter. Since plaintiffs do not seek a preliminary injunction, we need not decide this matter now. Whether plaintiffs are entitled to permanent injunctive relief can best be determined after a full development of all the facts. For the reasons stated, the motion of defendant New Superior to dismiss the complaint must be denied.

An appropriate order will be entered.