**CARPENTERS' DISTRICT COUNCIL OF WESTERN PENNSYLVANIA, UNITED BROTHERHOOD OF CARPENTERS AND JOINERS OF AMERICA, Plaintiff,**

v.

**W. O. KESSEL CO., INC., t/d/b/a Kessel Construction Company, Inc., Defendant.**

Civ. A. No. 78–52 B Erie.

United States District Court,
W. D. Pennsylvania.

March 26, 1980.

Ronald Gilardi, Pittsburgh, Pa., for plaintiff.

Charles J. McKelvey, Williamsport, Pa., for defendant.

## OPINION

KNOX, District Judge.

This action arises under the Labor-Management Relations Act of 1947, *as amended*, 29 U.S.C. § 141 *et seq.* and is brought by the plaintiff labor organization, Carpenters' District Council of Western Pennsylvania, United Brotherhood of Carpenters and Joiners of America (the Union) to secure injunctive and monetary relief for breach of a collective bargaining agreement entered into with defendant W. O. Kessel Company, Inc., of whom Kessel Construction Company, Inc. is allegedly the alter ego. Jurisdiction is properly invoked pursuant to Section 301 of the Labor-Management Relations Act, 29 U.S.C. § 185 (hereinafter the Act).

The case was tried before the court non-jury on November 19, 1979. The court makes the following:

### Findings of Fact

1. Plaintiff, the Carpenters' District Council of Western Pennsylvania, United Brotherhood of Carpenters and Joiners of America (the Union) is a labor organization with its headquarters in Pittsburgh, Pennsylvania.

2. Defendant, Kessel Construction, Inc. is a Pennsylvania corporation located at 95 Rutherford Run, Bradford, Pennsylvania, where it is engaged in the construction business.

3. W. O. Kessel Co., Inc. was originally formed as a Pennsylvania corporation headquartered in Bradford, Pennsylvania, where it was also engaged in the construction business. Prior to July of 1976, W. O. Kessel was owned by Richard Kessel, W. O. Kessel, Martha Wilcox and Alan Kessel, all of whom are related by blood or marriage.

In July of 1976, Richard Kessel became its sole owner.

4. W. O. Kessel Co., Inc. had a long standing collective bargaining relationship with the Union. In April of 1976, W. O. Kessel formally entered into a collective bargaining agreement with the Union which included, *inter alia,* a pre-hire agreement, wage and fringe benefits provision, and a dues-checkoff provision. (See Plaintiff's Exhibit 1) This collective bargaining agreement covered the time period from April of 1976 through March of 1979 and was to be renewed automatically each year thereafter unless written notice was given within 60 days of the expiration date.

5. In the fall of 1977, W. O. Kessel Co., Inc. was in serious financial trouble and on September 22, 1977 sold certain of its assets, including the right to use its name, to Angelo and Douglas Micale. The Micale brothers continued to operate W. O. Kessel in the same line of business with the same employees, although under a different name, and continued to comply with the terms of the collective bargaining agreement negotiated between the Union and W. O. Kessel.

6. Also on September 22, 1977, Richard Kessel chartered a new corporation, Kessel Construction Co., Inc., owned by Richard and his wife. The substantial bulk of assets owned by W. O. Kessel Co., Inc. were sold to Kessel Leasing Co., owned solely by Richard Kessel. Kessel Leasing Co., in turn, leased those assets to Kessel Construction Co., Inc.

7. Paul (Tex) Adams, field supervisor for W. O. Kessel, went with Kessel Construction, as did Lars Olsson, present foreman for Kessel Construction Co., Inc. None of Kessel Construction Co.'s employees were ever union members.

8. In March of 1978, Richard Kessel informed Glenn E. McMillen, business representative of the Union, that his attorney had informed him that his new corporation was not bound by the terms of the collective bargaining agreement and that he had no intention of honoring it.

9. W. O. Kessel and Kessel Construction operated out of the same office facilities, were primarily engaged in the business of designing and constructing "butler buildings" in the same geographic area and engaged employees who render carpentry services.

*Discussion*

Defendant contends that there was never a contract between the parties, since none of its employees were union members nor did Kessel Construction Co., Inc. ever sign a contract with the Union. Therefore defendant contends there is no jurisdiction under § 301 of the Act. Under 29 U.S.C. § 185(a), both the existence of a contract of the kind specified therein and a violation of that contract are indispensable prerequisites to the court's jurisdiction. *Adams v. Budd Co.,* 349 F.2d 368 (3d Cir. 1965); *Leskiw v. International Brotherhood of Electrical Workers,* 464 F.2d 721 (3d Cir. 1972), *cert. denied,* 409 U.S. 1041, 93 S.Ct. 526, 34 L.Ed.2d 490 (1972). Whether or not a contract exists in this case depends on plaintiff's ability to prove that Kessel Construction Co., Inc. is in fact the alter ego of W. O. Kessel Co., Inc., who admittedly did have a contract with the Union. Under 29 U.S.C. § 185, the court has jurisdiction to determine whether or not there is a contract between the parties. *Local 336, American Federation of Musicians, AFL–CIO v. Bonatz,* 475 F.2d 433 (3d Cir. 1973); *United Steelworkers of America v. Copperweld Steel Co.,* 230 F.Supp. 383 (W.D.Pa. 1964).

This case arises from a unique set of facts combining national labor law policy with the substantive law of corporations. Plaintiff contends that the sale of W. O. Kessel Co., Inc. to the Micales was a sham to enable Richard Kessel to reincorporate W. O. Kessel under a new name and continue to do business without the restrictive provisions of the collective bargaining agreement. His contention is not that Kessel Construction is a "successor" corporation under principles of labor law, but rather that W. O. Kessel and Kessel Construction are one and the same, that one is the alter ego of the other, and that the new corporate entity should be disregarded because it was organized for an unlawful purpose.

Successorship comes into play when there is a change in the corporate structure or ownership of a business which is bound by a collective bargaining agreement. *John Wiley and Sons v. Livingston,* 376 U.S. 543, 549, 84 S.Ct. 909, 914, 11 L.Ed.2d 898 (1964). It deals with the extent to which an employer is obligated to honor the legal relationships established between another employer and the union. *General Teamsters, Chauffeurs and Helpers, Local Union No. 249 v. Bill's Trucking,* 493 F.2d 956 (3d Cir. 1974) (hereinafter *Bill's Trucking*). When W. O. Kessel sold its name and certain of its assets to Angelo and Douglas Micale, the Micales became the successor corporation. That the Micales continued to honor the terms of the collective bargaining agreement has not been questioned. The Union is asking the court to find that by simultaneously incorporating a new business without change of address or business purpose, Kessel Construction Co., Inc. is the alter ego of W. O. Kessel and should also be bound by the terms of the collective bargaining agreement.

A similar fact situation was litigated in *International Union of Operating Engineers, Local No. 66, AFL–CIO v. Linesville Construction Co.,* 457 Pa. 220, 322 A.2d 353 (1974). In that case, the union had an agreement with Linesville Construction Co. for the construction of a pipeline in Elk County. Linesville allegedly created a new corporation, Utility Construction Co., to construct the same pipeline, using the same equipment and personnel, without abiding by the terms of the collective bargaining agreement. The court found the essence of the complaint to be that Linesville was performing work covered by its agreement with the union under the guise of another corporation in order to circumvent the terms of the agreement. The court held that if it was established at trial that Utility was the alter ego of Linesville, "public policy requires that Linesville not be permitted to evade its obligation under its agreement . . . and that the latter corporation, although not signatory to the agreement, be ordered to be held to the agreement." *Id.* at 357.

A corporation is in fact a collection of individuals and the idea of the corporation as a legal entity is a mere fiction of the law introduced for convenience in conducting business in this privileged manner. *Tucker v. Binenstock,* 310 Pa. 254, 165 A. 247 (1933); *Great Oak Building and Loan Assoc. v. Rosenheim,* 341 Pa. 132, 19 A.2d 95 (1941). It is now settled that when this fiction is urged to an intent not within its reason or purpose, it may be disregarded. *Id.* Beginning with the general rule that the corporate entity should be recognized and upheld except in the most unusual circumstances, the Pennsylvania courts have defined appropriate occasions for disregarding the corporate entity to include the prevention of fraud, illegality or injustice, or when recognition of the corporate entity would defeat public policy or shield someone from liability for a crime. *American Kitchen Foods, Inc. v. Hersch Cold Storage Co.,* 435 F.Supp. 1127 (W.D.Pa.1977); *Zubik v. Zubik,* 384 F.2d 267 (3d Cir. 1967).

The Act and cases dealing with successorship in the area of labor law provide insight into the public policies which are at stake by the reshuffling of articles of incorporation by employers. The findings and declaration of policy under the Act are:

. . . to eliminate the causes of certain substantial obstructions to the free flow of commerce and to mitigate and eliminate these obstructions when they have occurred by encouraging the practice and procedure of collective bargaining and by protecting the exercise by workers of full freedom of association, self-organization, and designation of representatives of their choosing, for the purpose of negotiating the terms and conditions of their employment or other mutual aid or protection. 29 U.S.C. § 151.

The focus of concern in cases interpreting and enforcing this policy centers around the employee. In *John Wiley and Sons v. Livingston, supra,* the Supreme Court held that "[t]he objectives of national labor policy, reflected in established principles of federal law, require that the rightful prerogative of owners independently to rearrange their

58

businesses and even eliminate themselves as employers be balanced by some protection to the employees from a sudden change in the employment relationship. 376 U.S. at 549, 84 S.Ct. at 914.

While the holding in *John Wiley and Sons* was limited to the successor's duty to arbitrate, *Bill's Trucking* extended this holding to apply to a successor's duty to abide by the other substantive terms of the contract. In considering whether one corporation was the successor of another, the Third Circuit Court of Appeals listed six evidentiary factors to be considered, stressing that "[t]he lens through which these evidentiary factors should be scanned is, of course, the perspective of the employees. The basic inquiry is whether the change in the structure of the employing enterprise should be deemed to have significantly altered the employment relationship as perceived by the employees." 493 F.2d at 963 n. 40.

■ Viewing the transactions culminating in this action from the perspective of the Union members employed by W. O. Kessel Co., Inc. at the time of the sale and subsequent reincorporation by Richard Kessel, we do not see how their employment relationship was significantly affected. The Micale brothers continued to employ all union members previously employed by W. O. Kessel and continued to honor the wage and benefit provisions of the contract. Nor do we see how the Union was hurt by the corporate reorganization. The Union alleges that it has lost the dues it would have collected if Kessel Construction Co., Inc. abided by the contract and hired only union employees. For the Union to receive dues from its members kept on by the Micale brothers and to also receive dues from new employees subsequently hired by Kessel Construction would put it in a far better position than it would have been had the business never been sold. In effect, all the Union has lost is a chance to collect additional dues.

While the Union also has an interest in ensuring that employers comply with the terms of its collective bargaining agreements, it has little concern with whom that employer is. In this case, the terms of the contract negotiated in good faith between the Union and W. O. Kessel were being fully honored by the Micale brothers and the rights of the employees pursuant to that agreement were unaffected by the sale. Had the Micale brothers refused to recognize the agreement, this would be an entirely different situation and public policy may justify thwarting the scheme of Richard Kessel. However, under the facts of this case, there is ample evidence that W. O. Kessel would have been driven out of business entirely and all his unionized employees would have been out of work had he not sold out to the Micales. As long as someone was honoring the contract and the union members were protected, the fact that Richard Kessel was able to reincorporate and continue in business with non union employees has not worked to the detriment of the Union or its members and does not justify disregarding the corporate entity.