**LOCAL 538 UNITED BROTHERHOOD OF CARPENTERS AND JOINERS OF AMERICA, Northern New England District Council of Carpenters, Local 522 Laborers' International Union of North America, and Maine, New Hampshire and Vermont Laborers' District Council, Plaintiffs–Appellants, Cross–Appellees,**

v.

**UNITED STATES FIDELITY AND GUARANTY COMPANY, Defendant–Appellee, Cross–Appellant.**

Nos. 368, 850, Dockets 94–7351, 94–7353.

United States Court of Appeals,
Second Circuit.

Argued Jan. 24, 1994.

Decided Nov. 28, 1995.

Anne R. Sills, Segal, Roitman & Coleman, Boston, MA, for Laborer Plaintiffs–Appellants, Cross–Appellees.

Jeffrey Neil Young, McTeague, Higbee, Libner, MacAdam, Case & Watson, Topsham, ME, for Carpenter Plaintiffs–Appellants, Cross–Appellees.

Bradford R. Carver, Boston, MA (Edward F. Vena, Michael S. Levitz, Vena, Truelove & Riley, of counsel), for Defendant–Appellee, Cross–Appellant.

Before VAN GRAAFEILAND and WINTER, Circuit Judges, and KAPLAN,* District Judge.

WINTER, Circuit Judge:

This is a diversity action brought by local unions against an employer's surety to collect union dues withheld by the employer and unpaid employer contributions to certain employee health and welfare funds. Chief Judge Parker granted summary judgment for the unions but declined to award attorney's fees, liquidated damages, or interest. The unions appeal from the latter denial. The surety cross-appeals on a host of grounds. We hold that the unions have standing to bring such an action but that the trustees of the funds are necessary parties to such an action. We do not reach the merits.

## BACKGROUND

In 1991, Granger Northern, Inc., a general contractor, entered into a contract with the University of Vermont to construct the school's Emerging Technologies Complex in Burlington, Vermont. Granger Northern contracted with defendant United States Fidelity and Guaranty Company ("USF & G") for a Labor and Material Payment Bond. Granger Northern subsequently subcontracted certain work to Amcan, Inc., which signed agreements with Local 538, United Brotherhood of Carpenters and Joiners of America ("the Carpenters"), and with Local 522, Laborers' International Union of North America and the Maine, New Hampshire, and Vermont Laborers' District Council (collectively "the Laborers").

Amcan's agreement with the Carpenters obliged it to pay certain amounts per employee, per hour to designated health and welfare funds ("the Carpenters' Funds"). Amcan also agreed to withhold $.25 per Local 538 employee, per hour as union dues. Local 538's members in turn assigned the dues to Local 538.

Amcan's agreements with the Laborers similarly required per employee, per hour payments to designated health and welfare funds ("the Laborers' Funds"). The agreement between Amcan and the Laborers also provided that $.34 per hour, per Local 522 employee, would be deducted from employee pay for union dues, pursuant to the members' assignment to the Local.

Amcan failed to make $32,160.38 in contributions due to the Carpenters' Funds for the periods March through May, 1991 and July, 1991 through March, 1992, and failed to pay Local 538 dues withheld in the amount of $2,234.63. Amcan similarly failed to make $46,332.30 in contributions due to the Laborers' Funds from July, 1991 to March, 1992,

---

* The Honorable Lewis A. Kaplan, United States District Judge for the Southern District of New York, sitting by designation.

and failed to pay Local 522 $3,750.51 in dues withheld.

Local 538 and Local 522 brought this action to recover the unpaid amounts from USF & G, as surety for Granger Northern, under the terms of the Labor and Material Bond. The district court granted summary judgment for the plaintiffs with regard to the unpaid dues and benefit payments but declined to award attorney's fees, liquidated damages or interest. The local unions appealed from the latter denial, and USF & G cross-appealed from the money judgment against it.

## DISCUSSION

### A. *The Judgment for Unpaid Dues*

USF & G does not dispute that the local unions are proper parties to bring an action for union dues withheld by an employer but never paid to the union. Local 538 concedes that the district court erroneously calculated dues at 35 cents an hour instead of 25 cents. That can be corrected on remand. Agreement ceases there.

■ USF & G argues that, based on the language of the Bond, dues are owed only for those employees who worked within ninety days of the notices of claims. A similar argument is made with regard to the unpaid contributions to the health and welfare funds, and, in light of our disposition of this matter, we believe it inappropriate to address this issue until the funds' trustees have been joined as parties and can speak to it. *See* Part C., *infra.*

■ USF & G also argues that the judgment regarding Local 522 dues should be reversed because the notice of claim failed to assert that the union was seeking dues. This argument was not raised in the district court, and we deem it waived.

### B. *The Unions' Standing to Bring a Collection Action for Unpaid Contributions to Health and Welfare Funds*

■ We next consider whether the unions have standing to bring a collection action for contributions due to health and benefit funds. USF & G argues that the trustees of the funds are the only proper parties to seek recovery of contributions due the funds. *See Carpenters & Millwrights Health Benefit Trust Fund v. Domestic Insulation Co.*, 387 F.Supp. 144, 147 (D.Colo.1975).

Ordinarily, "a party ... in whose name a contract has been made for the benefit of another ... may sue in that person's own name without joining the party for whose benefit the action is brought." Fed.R.Civ.P. 17(a). In *Warshaw v. Local No. 415, Int'l Ladies' Garment Workers Union, AFL–CIO*, 325 F.2d 143 (5th Cir.1963), however, the Fifth Circuit rejected the argument that a union may sue for unpaid contributions to a health and welfare fund required by a collective agreement trust without joining the fund as a party. *Warshaw* stated that "cases [citing Rule 17(a)] failed to take into consideration the fact that a collective bargaining agreement relating to health and welfare funds is not a typical third-party beneficiary contract and is not necessarily governed by the procedural rules normally applied to them." *Id.* at 145. In the context of a collective bargaining agreement, "a consideration which is not present in the case of other third-party beneficiary contracts is the impact of the national labor policy," which "becomes an important consideration in determining whether the same inferences which might be drawn as to other third-party agreements should be drawn here." *Lewis v. Benedict Coal Corp.*, 361 U.S. 459, 470, 80 S.Ct. 489, 495, 4 L.Ed.2d 442 (1960).

However, there is no policy of labor law that militates against unions bringing actions for delinquent contributions to health and welfare funds so long as the funds are joined as parties. *See* Part C., *infra.* Locals 538 and 522 negotiated with Amcan for contributions to the funds as part of their overall wage agreements. Unions may have a strong interest in seeing that collective agreements are uniformly enforced so that one employer does not have a competitive advantage over others based on its failure to abide by the terms of a collective agreement. Once one employer is allowed to benefit from delinquencies under a collective agreement, others may seek—may be compelled to seek—to follow. We believe that this inter-

est is sufficient to permit unions to be parties to actions seeking the payment of delinquent contributions to health and welfare funds as required by a collective agreement. USF & G suggests that this holding will somehow make unions the "general litigating agencies" of their "members." *See Rock Drilling, Blasting, etc. Local Union No. 17 v. Mason & Hanger Co.*, 217 F.2d 687 (2d Cir.1954), *cert. denied*, 349 U.S. 915, 75 S.Ct. 604, 99 L.Ed. 1249 (1955). We disagree. It simply allows Local 538 and Local 522 to enforce the benefit of their bargains, and no more.

### C. The Funds' Trustees as Necessary Parties

■ Although we see no infirmity in the unions' initiation of this action, we nevertheless believe that the funds' trustees should be joined as parties.[1] Subject to certain exceptions, Rule 19 of the Federal Rules of Civil Procedure requires that

> [a] person who is subject to service of process and whose joinder will not deprive the court of jurisdiction over the subject matter of the action shall be joined as a party in the action if ... the person claims an interest relating to the subject of the action and is so situated that the disposition of the action in the person's absence may ... as a practical matter impair or impede the person's ability to protect that interest.

The judgment in this action could well be res judicata in any future action by the funds to compel payment of the contributions at issue. Unless the trustees are joined, the unions in effect may have sole discretion to settle or otherwise compromise the claims for the delinquent contributions owed to the funds, perhaps thereby foreclosing a subsequent action by the funds' trustees to recover delinquent benefits. In such circumstances, permitting the unions to proceed without the trustees may impair or impede the funds' ability to protect their interests in the claim. *Compare Health–Chem Corp. v. Baker*, 915 F.2d 805, 810 (2d Cir.1990) (where judgment

not binding on non-party and possibility of litigation with that non-party was only speculative, there existed no basis for compulsory joinder).

As noted in Part B., *supra*, unions generally will seek uniform enforcement among employers of their collective agreements. However, unions must also attend to current negotiations and the present economic conditions of particular employers. The interests of unions and those of health and benefit funds may thus at times diverge, because a union's power to offer an employer a settlement of an action for delinquent contributions as a bargaining chip may conflict with the trustees' duty to maximize trust assets. Considering the possibly binding effect of this suit on the funds and the potential divergence of interests between the unions and the funds, we conclude that the funds' trustees should be joined as necessary parties.

Caselaw relied upon by the unions does not persuade us otherwise. *Office and Professional Employees Int'l Union, Local 2 v. FDIC*, 962 F.2d 63 (D.C.Cir.1992), did not involve an employee benefit trust and thus did not even discuss, much less reach, the issue of whether a third-party beneficiary trust fund must be joined in a suit to recover delinquent contributions to it. The question posed in *Local 2* was only whether a union may bring members' claims in its own name against an employer-bank under the Financial Institutions Reform, Recovery, and Enforcement Act of 1989, 12 U.S.C. § 1821.

*Local 1902, Allied Service Division, etc. v. Safety Cabs, Inc.*, 414 F.Supp. 64 (M.D.Fla. 1976), is also inapposite. Although *Local 1902* was a suit to compel contributions due to health and welfare funds, the only issue was whether the union had standing to seek to enforce an arbitrator's award without joining the individual employees when the collective bargaining agreement had explicitly given the union authority to pursue the arbitration claim.

---

1. USF & G has not explicitly argued that the fund trustees are indispensable parties, although that position is implied in USF & G's argument that the funds, not the unions, are the real parties in interest. We will consider the nonjoinder of a necessary party, even in the absence of an objection under Rule 19(a). *See Manning v. Energy Conversion Devices, Inc.*, 13 F.3d 606, 609 (2d Cir.1994).

Only two of the cases cited by the unions explicitly address whether fund trustees must be joined where they are third-party beneficiaries of a union's agreement. One of these is easily distinguishable. *Local Union No. 641 of Amalgamated Butcher Workmen v. Capitol Packing Co.*, 32 F.R.D. 4 (D.Colo. 1963), permitted a union's solo claim where

> the effort ... is to get the plan off the ground, so to speak, and not to enforce payments to an established fund. There is, therefore, no opportunity for interests not before the court to be adversely affected by a decision herein.... Indeed, the union may well be the only party to the contract who can specifically enforce the obligation.

*Id.* at 7. The second case, *United Construction Workers, etc. v. Electro Chemical Engraving Co.*, 175 F.Supp. 54 (S.D.N.Y.1959), relied on by the district court in the instant matter, appears to be the only case that supports the unions' position that the trustees need not be joined. *See id.* at 56. We do not, however, find the decision persuasive.

The only court of appeals decisions to explicitly consider this issue have required joinder of the fund trustees. The Tenth Circuit stated in *United Mine Workers, District 22 v. Roncco*, 314 F.2d 186 (10th Cir.1963), that "the trustees of [a mine workers' welfare] fund are the proper parties to commence suits to enforce payment to the fund." *Id.* at 187. In *District 22*, the district court had acknowledged that the union was asserting contract rights that it could ordinarily assert. It noted, however, that the union had "a limited interest in the management of the welfare fund" and thus held that "[t]he trust-

ees are the real parties in interest, and the only parties legally interested when suit is brought to enforce payment into the fund." *United Mine Workers, District 22 v. Roncco*, 204 F.Supp. 1, 3 (D.Wyo.1962), *rev'd in part on other grounds*, 314 F.2d 186 (10th Cir. 1963). Relying in part on *District 22*, the Fifth Circuit reached the same result in *Warshaw*, reversing and remanding a trial court's enforcement of an arbitrator's award to a multiemployer health and welfare fund in part because the union plaintiff had failed to join the fund's trustees.[2] *Warshaw*, 325 F.2d at 145.

We therefore conclude that the funds should have been joined as parties in this action. We do not, however, direct that this action be dismissed because, as the Supreme Court has noted, an inflexible approach is exactly what Rule 19 was designed to avoid. *See Provident Tradesmens Bank & Trust Co. v. Patterson*, 390 U.S. 102, 107, 88 S.Ct. 733, 736, 19 L.Ed.2d 936 (1968). Instead, we take, on our own initiative, steps to protect the interest of the funds, *id.* at 111, 88 S.Ct. at 738, by remanding to the district court for joinder of the trustees as parties or other proceedings the court deems necessary in light of this opinion.

Remanded.

---

**2.** We do not, however, agree with USF & G that *Warshaw* and *District 22* militate against permitting the unions to remain parties in this action. The relevant portion of *Warshaw* reversed the district court's decision for "failure to join the trustees," 325 F.2d at 145, not for improper joinder of the union. To the extent that *District 22* may fairly be read to suggest that the unions are not appropriate parties to an action to recover delinquent contributions to a welfare fund, we note that this portion of the *District 22* holding, 204 F.Supp. at 2, 3, rested on two cases, *Ass'n of Westinghouse Salaried Employees v. Westinghouse Corp.*, 348 U.S. 437, 75 S.Ct. 489, 99 L.Ed. 510 (1955), and *Int'l Ladies' Garment Workers' Union v. Jay-Ann Co.*, 228 F.2d 632, 633 (5th Cir.1956),

that are no longer valid law. *See United Steelworkers of America v. Copperweld Steel Company*, 230 F.Supp. 383, 386 (W.D.Penn.1964) (*Westinghouse* abrogated by *Smith v. Evening News Ass'n*, 371 U.S. 195, 83 S.Ct. 267, 9 L.Ed.2d 246 (1962)); *Warshaw*, 325 F.2d at 145 (*Jay-Ann* abrogated by *Smith*). *See generally Local 2*, 962 F.2d at 66 n. 6. In addition, although the Tenth Circuit and trial court opinions in *District 22* both seem to indicate that the unions are not proper parties even if the trustees have been joined as plaintiffs, it appears that the case has not been interpreted to bar joinder of a union if fund trustees are joined as well. *See International Brotherhood of Teamsters, etc. v. Kebert Const. Co.*, 225 F.Supp. 58, 59–60 (W.D.Penn.1964).